# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

Leon Carter , Petitioner,

**Full Name** *(under which you were convicted)*

167725

**Prisoner Number**

Waupun Correctional Institution

**Place of Confinement**

vs

Brian Foster , Respondent.

**Authorized Person Having Custody of Petitioner**

Docket No. _____

*(to be supplied by Clerk)*

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254
## BY A PERSON IN STATE CUSTODY

**Caution:** THIS IS NOT THE FORM TO BE USED, IF YOU CLAIM THAT YOUR FEDERAL SENTENCE OR CONVICTION IS UNLAWFUL, OR IF YOU ARE A PRETRIAL DETAINEE CHALLENGING YOUR PRECONVICTION CUSTODY, A FEDERAL PRISONER CHALLENGING THE EXECUTION OF YOUR SENTENCE OR AN ACTION TAKEN BY THE BUREAU OF PRISONS, OR A PERSON IN CUSTODY CHALLENGING AN IMMIGRATION-RELATED ORDER.

§ 2254      Case 2:17-cv-01497-PP      Filed 10/30/17      Page 1 of 62      Document 1   June 2013

1

**I. SUBJECT OF THIS PETITION**

A. Name and location of the state court that entered the judgment of conviction which you are challenging

Milwaukee County Circuit Court

821 West State Street

Milwaukee, WI 53233

B. Criminal docket or case number    11-CF-3689

C. Date of the judgment of conviction   February 19, 2013/ amended 11-12-2014

D. Date of sentencing   February 15, 2013

E. Length of sentence   63 years initial confinement/23 years ex. super

F. In this case, were you convicted on more than one count or of more than one crime?

☒ Yes          ☐ No

G. Identify all crimes of which you were convicted and sentenced in this case

(3) Counts of second-degree sexual assault w/use of force

(1) Count of second-degree sexual assault causing injury to a

sex organ

(1) Count of strangulation & suffocation/(1) Count Kidnapping

H. What was your plea? *(Check one)*

☒ Not guilty      ☐ Guilty      ☐ Insanity plea      ☐ Nolo contendere *(no contest)*

If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

N/A

I. If you went to trial, what kind of trial did you have? *(Check one)*

☒ Jury      ☐ Judge only

**SUBJECT OF THIS PETITION** - *continued*

    J.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

          ☐ Yes       ☒ No

          If yes, state the type(s) of hearing or proceeding

## II.  DIRECT STATE APPEAL OF CONVICTION

    A.  Did you appeal from the judgment of conviction?

          ☒ Yes       ☐ No

          If yes, attach the decision(s) that resolved your appeal and answer the following questions:

        1.  Date of filing appeal `October 13, 2014`

        2.  Grounds raised `Appellate counsel raised as a ground that there` `would be no arguable merit to assert that Carter did not` `recieve a fair trial; that the trial court erred in denying` `Carter's Shiffra motion; that the trial court erred in failing` `to conduct a retrospective inquiry; that trial court erred in` `denying Carter's motion for a mistrial based on ex parte` `communications with the baliff.`

        3.  Result `Judgment summarily affirmed`

        4.  Date `November 5, 2015`

    B.  Did you seek further review by the highest state court?

          ☒ Yes       ☐ No

          If yes, attach the decision(s) that resolved your petition for review and answer the following questions:

        1.  Date of filing of petition for review `March 7, 2016`

        2.  Grounds raised `Carter was deprived of his sixth amendment right to` `the effective assistance of counsel on his first appeal as of` `right, and his fourteenth amendment right to a meaningful` `appeal when the Wisconsin Court of Appeals District I accepted` `appellate counsel's inadequate no-merit report.`

        3.  Result `Denied.  See Exhibit N`

        4.  Date `May 5, 2016`

**DIRECT STATE APPEAL OF CONVICTION** - *continued*

   C. Did you file a petition for certiorari in the United States Supreme Court?

   ☒ Yes          ☐ No

   If yes, attach the decision(s) that resolved your petition for certiorari and answer the following questions:

   1. Date of filing petition for certiorari __July 28, 2016__

   2. Grounds raised __Carter was deprived of his sixth amendment right to__
      __the effective assistance of counsel on his first appeal as of__
      __right, and his fourteenth amendment right to a meaningful appeal__
      when the Wisconsin Court of Appeals for District I accepted
      __appellate counsel's inadequate no-merit report.__

   3. Result __Denied__   See Exhibit O

   4 Date __November 28, 2016__

III.  **STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL**

   A. Other than the appeals listed above in Section II, have you previously filed any other state petitions, applications, or motions concerning **this** state judgment of conviction?

   ☐ Yes          ☒ No

   If yes, attach the decision(s) that resolved your application for state post-conviction relief and answer the following questions:

   1  Name of court _____

   2. Docket or case number _____

   3  Date of filing _____

   4. Type of petition, application, or motion filed _____

   5. Grounds raised _____

   _____

   _____

   6. Did you receive a hearing where evidence was given on your petition, application, or motion?

   ☐ Yes          ☐ No

   7. Result _____

## STATE POST-CONVICTION RELIEF OTHER THAN DIRECT APPEAL- *continued*

    8. Date _____

    9. Did you appeal to the highest state court having jurisdiction over the action taken on your first state petition, application, or motion?

        ☐ Yes    ☐ No

B. If you filed a second petition, application, or motion, attach the decision and answer the following questions:

    1. Name of court _____

    2. Docket or case number _____

    3. Date of filing _____

    4. Type of petition, application, or motion filed _____

    5. Grounds raised _____

    _____

    _____

    6. Did you receive a hearing where evidence was given on your petition, application, or motion?

        ☐ Yes    ☐ No

    7. Result _____

    8. Date _____

    9. Did you appeal to the highest state court having jurisdiction over the action taken on your second state petition, application, or motion?

        ☐ Yes    ☐ No

    _____

    _____

C. If you filed a third petition, application, or motion, attach the decision and answer the following questions.

    1 Name of court _____

    2. Docket or case number _____

    3 Date of filing _____

4. Type of petition, application or motion filed _____

5. Grounds raised _____

_____

_____

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☐ No

7. Result _____

8. Date _____

9. Did you appeal to the highest state court having jurisdiction over the action taken on your third state petition, application, or motion?

☐ Yes ☐ No

## IV. GROUNDS FOR RELIEF

For this petition, state **every** ground supporting your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION**: To proceed in the federal court, you must ordinarily first exhaust *(use up)* your available state-court remedies on each ground on which you request action by the federal court.

Ground One  Carter was deprived of his sixth Amendment right to the
Effective Assistance of Cousel on his first appeal as of right, and
his Fourteenth Amendment Right to a meaningful appeal when the
Wisconsin Court of Appeals, Dist. I, accepted appellate counsel's
inadequate no-merit report without an independant review and anal-
ysis of several meritorious claims.
Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

The amended criminal complaint charged Leon G. Carter with six fel-
onies, including four counts of second-degree sexual assault, kid-
napping, and strangulation. All counts invol;d Yubastine Mathis with
whom Carter was romantically involved for over ten years. The com-
plaint stated that Carter had severely physically, sexually and
psychologically abused Mathis for over ten years and treats her as
his property. See, (Ex. A:2)(Court of Appeals Decision and Order,
November 5, 2015)p. 2.

## GROUNDS FOR RELIEF - *continued*

The complaint indicated that Carter had been criminally charged with sexually assaulting Smith in 2002 and 2004, and that he ultimately pled guilty to battering and intimidating Smith in those convictions. In June 2010, shortly after his most recent release from prison, Carter reunited with Smith and they went to the transitional living center where he was living. Smith later told police she was held there against her will over a period of two months, during which she was beaten and sexually assaulted.

From the outset of the case, Carter's defense was that he did not hold Smith against her will and that she was lying about being abused. To demonstrate that Smith was incredible, Carter sought information about Smith's past mental health treatment and a prior allegation against a police detective that resulted in an internal affairs report. Ultimately, the trial court ruled that information about those incidents could not be admitted at

(Continued at "A.1")

If you did not exhaust your state remedies on Ground One, explain why.

_____

_____

_____

Ground Two_____

_____

_____

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law )*

_____

_____

_____

_____

_____

_____

_____

_____

trial. In addition to ruling on motions related to Mathis's mental health history and the internal affairs report, the trial court granted the states motion to admit evidence of Mathis's prior abuse allegations against Carter, including those that resulted in criminal convictions. (Ex.A:2-3).

The case was tried to a jury over five days and Carter was ultimately found guilty of all six counts and sentenced to a total of sixty-three years of initial confinement and twenty-three years of extended supervision. Id.

On January 9, 2012, trial counsel Julius Andriusis, filed Carter's notice of motion and brief in support of motion to produce alleged victim's medical records and affidavit. (R.77)(Ex. B:), *Shiffra* Motion.

In the facts portion of the Shiffra motion, trial counsel asserted, "The defendant, who lives together with Yubastine Mathis for extended period of time and has intimate knowledge of her affairs, saw personally her getting psychotropical medications being refilled at pharmacies. In addition, the investigation up to date reveals Yubastine Mathis as a very strange person. She has filed restraining orders against numerous people, also numerous people filed restraining orders against her (including her own sister), she violated at least one of them and received criminal conviction in case 05CM8908. Back in 2002 Yubastine filed and received the restraining order against the defendant (Case No. 2002FA7584); however, not even the year after since the issuance of the restraining order, she walked back to the court and removed the restraining order against the defendant whom she accused of raping her back in 2002 (Case No. 2002CF5566). Moreover, in 2003, Yubastine contacted the defendant's probation agent indicating

abuse. The agent decided to speak with Ms. Mathis in person and when arrived to her house the probation agent observed that Yubastine was walking "with a telephone in her hand with a long cord wrapped around her body. She was walking and acting very paranoid." (Ex. B: 2). When asked what is going on she indicated that she did not want to speak with police because she was abused by police and they told her that she owes police and has to give them oral sex. See id. All these cases and fact that the defendant observed her using psychotropical medications indicates that Yubastine Mathis might be suffering from some kind of form of mental illness." (R.77:1-2)(Ex.B:1-2).

In Carter's affidavit in support of his Shiffra motion, he averred that " around 2003, and when Ms. Mathis lived at 2431 w. Capital Drive in Milwaukee Wisconsin…[he] went to Walgreen's with Ms. Mathis to obtain her prescription. Ms. Mathis prescription was for seroquel, which [he] knew was used for mental health problems." (Ex. C: 1).

In addition, in Carter's affidavit in support of his Shiffra motion he averred that, also around 2002 and or 2003, when he was in the House of Corrections, Ms. Mathis came to visit …Ms. Mathis was complaining that she no longer wanted to take her mental health medications, which she stated were Seroquel, Trazodone, and Remeron…Ms. Mathis said she did not want to take those medications because they caused her to gain weight and she had lots of nice clothing that she wanted to continue to wear…Ms. Mathis also complained that these medications caused her to have problems with sleep walking also." (Ex. C: 1-2).

On March 9, 2012, a motion hearing was held where trial counsel appeared before the court stating; "Leon Carter by Julius Andriusis. Judge, I did file a motion a *Shiffra* motion earlier in this case and it was scheduled today for a *Shiffra* motion. I did file also

an affidavit and—drafted by me and also drafted by Ms. Cindy Popka, and spoke personally with Mr. Carter." (R. 78: 2)(Ex. D: 2).

At the March 9, 2012 motion hearing trial counsel expressed his "readiness to argue the Shiffra motion." (R. 78:3). Trial counsel asserted at this motion hearing that, "… a report that I'm asking—I think it might be relevant for my *Shiffra* motion because my private investigator tried to get all police reports involving Yubastine Mathis' conduct with police, and we were able to get everything with the exception of one report. And I have some reason to believe that she might have made some false accusations against— that they were, either assaulting her or harassing him in a sexual way. And I believe--- well. I don't know, but I think it might be the support that was not released to my private investigator. And it might be relevant to that *Shiffra* motion.

So I don't know what the state's position is in regards to that report. I believe the State might obtain a copy of that report and provide it to me. That might be relevant to my *Shiffra* motion argument. So it would be kind of good for me to have that report before I could make a *Shiffra* motion argument on this case." (R. 78: 3-4)(Ex. D: 3-4).

After hearing trial counsel's statements the trial court stated, " Well, the court has the *Shiffra* motion prepared and potentially to litigate or discuss that today. Both sides filed additional motions today…Let me hear from the state on the *Shiffra* issue. And realistically, I don't know how much we're going to be able to get done with your new filing today. Let me hear from the state, please." (R. 78: 4)(Ex. D:4).

In response to the trial courts request to hear from the state, ADA Lewis stated, " Yes, your honor Well, with regard to the *Shiffra* motion the state opposes it. The states position is that there isn't a sufficient basis set forth to satisfy the requirements as they've

been established in the case law...And with regard to the motion to compel, I'm still giving thought to this. I do not have access to the report that I believe Mr. Andriusis is referring to. I suspect; I don't know if we're certain, but I suspect there may be a report that was created in relation to an internal affairs investigation. We can't obtain those absent a subpoena. If I wanted to obtain it, I would need to subpoena the Milwaukee Police Department to get a copy of that record. Mr. Andriusis could also, I believe, subpoena the Milwaukee Police Department to get a copy of the record.

I question, and it is likely relevant for foundation that's been established to show that it bears any relevance to this particular case. Many times there are internal investigations, or quite frankly, just investigations generally into allegations of sexual assault that do not proceed with charges, or are found to be unfounded...

Now, I haven't seen the documents...

So, I mean...I think I probably will in the interest of full disclosure, although I do question it's likely relevance, I will prepare a subpoena for the City of Milwaukee Police Department to obtain that record. But quite frankly, for preparing a subpoena I don't have a great amount of foundation for requiring it, but I think I probably can. That will take a little bit of time. It shouldn't take an exceptionally long amount of time to subpoena that information."(R.78:5-7)(Ex. D: 5-7). In considering the parties general positions, the trial court concluded, " All right. I will set an adjourned motion date. I will allow the defense to reply in the next, say, two weeks to the motions that were filed today by the state, the other acts motion. I will allow the state to look into the issue in the motion to compel to see if that can be resolved without a court order or without the court being directly involved in the conversations or discovery issues between both sides.

And we will set a hearing date and I will leave the trial date on for now. And I prefer to keep that on for that date, and six weeks roughly, on April 23rd. Then we will take that up further. We can deal with the *Shiffra* motion…"(R.78:8-9)(Ex. D:8-9).

On July 20, 2012, a motion hearing was held where trial counsel, appeared. The trial court in conducting the motion hearing acknowledged that the defense filed a motion relative to discovery, including some police reports and that the City Attorney's office filed a response to "quash" the subpoena request from the defense. (R.79: 3)(Ex. E: 3).

With respect to the City's response to "quash" the trial court asked to hear from trial counsel. In reply, trial counsel stated, "…my request started with motion to compel discovery because based on my client and alleged victim in this case, Yubastine Mathis, based on police reports, it's no secret they are living together and having knowledge of each other. They have multiple cases together on prior occasions, and it was based on the knowledge that client had that I see—that I thought I filed motion to compel discovery. State advised me that they don't have access to this material as regards to this sexual assault potential case against one of the detectives in 2003, and we both are in the same position as to get those records because it's confidential.

So then I issue subpoena to Milwaukee police department seeking those records, and it's based on clients knowledge and based on a report that's been filed in 2003. And that report is attached to affidavit that I filed on March 9th, 2012, that was affidavit in support of *Shiffra* motion I believe.

So I think this is also very much relevant to the *Shiffra* motion this—my attempt to get these police reports. But if court made ruling, I would renew my attempt to seek those

medical records if these reports would be provided to me like a joint request because that might have relevance with relating to her mental health.

And this report, judge, that I attached to the affidavit, indicates that back in 2003 when Leon Carter came out from jail, and there was some kind of fight between Leon Carter and Yubastine Mathis apparently Leon Carter found some notes in Yubastine Mathis' book, notebook that she—something was going on between her and some kind of detective, something sexual. (R.79: 10-12)(Ex. E: 10-12).

In response to trial counsel's statement the trial court asked, "...What the defense is looking for relative to the alleged victim, Yubastine Mathis, and relative to any involvement with the police department.

Is it related to some either relationship Ms. Mathis allegedly had with a police officer or some abuse that was allegedly going on at the handling of a Milwaukee police department officer? Can you clarify that for me?"(R.79: 12)(Ex.E: 12). In reply, trial counsel stated, " I believe she—well, I just based on this report, I believe she made complaint that she was sexually assaulted by detective." Id.

The court then sought clarity, " So the alleged victim in this case allegedly made a statement that she was assaulted by some officer or detective from Milwaukee police department? (R.79: 12-13)(Ex.E: 12-13).

Trial counsel answered, "Yes, Luis Johnson." In response, the trial court asked, "...Even if let's say something happened with some Milwaukee Police Department officer, how is that related to this case and what did or did not go on in 2010?" (R. 79: 13)(Ex.E:13).

Trial counsel, Julius Andriusis answered, " I believe that her complaint was investigated and dismissed as unfounded and just not—nothing—no action was taken against Detective Luis Johnson, so that complaint was dismissed.

So, also, in these other reports, client's affidavit that I filed seeking medical reports, it indicates that she is taking psychotropic medications especially in that time, in that 2003 area. But then she complained to the client that she no longer take no more psychotropic medication because it makes her gain weight, makes her look fat, and she has nice clothing that makes her look thin. She just doesn't want to use anymore those psychotropic medications.

But that was false allegation that was investigated by police and was dismissed as unfounded then I believe it could be admissible at sexual assault trial case if she filed a false allegation on prior occasions against a detective. Also, that those reports might have some more information about her mental health. I think maybe with some additional investigation done and that would help for me—would support more my request for my *Shiffra* motion, which would be my request to review her medical records that she might be suffering from some medical misdiagnosis.

So these would be two points that I would like to bring, and I think on these two points that would be relevant to this case and might be helpful to the defense—for the defendants defense. It would be useful for the defendant's defense. That affidavit— clients affidavit is also attached to my affidavit which was filed back on March 9th, 2012."(R.78: 13-14)(Ex. D: 13-14).

In response ADA Lewis stated, ".... to suggest that there would be somehow very particularized information regarding this victim's mental health status or taking of

psychotropic drugs and that—I don't know what facts he knows that made him to believe that an internal affairs investigation file on this officer or detective would somehow contain that level of detailed information about the victim or that even if it contains information of that particular type of nature that it would be the type that would meet the *Shiffra Green* standard or bear on -- or be the type of information that would help the defense in building an affidavit to, you know, convince this court that there's sufficient facts to believe that this alleged victim's mental health records would contain information that would likely be—and I can't remember the verbatim standard, but it's highly probative or exculpatory, etc. It can't be just generally relevant or potentially be something that might have an impact on the case. It had to be specific and particularized.

I think we have a lot of inferential leads here and very few facts to base it on. And there's case law the city attorney is going to point that protects these types of internal affairs records. I don't think to the extent that it can be penetrated that Mr. Andriusis is articulating anywhere near particularized enough factually based argument for getting that type of a confidential record." (R.79: 16-17)(Ex.E: 16-17). In response to the parties arguments the trial court stated, " Before I hear from the City Attorney, which I will in a minute, counsel, some of what Ms. Lewis just indicated is along the lines of my concerns. How is this all not just basically a fishing expedition; that there might possibly, arguably be some record somewhere, whether it's in some internal affairs file or it's in a medical record from 5 or 10 years ago, how is this not basically just a fishing expedition that there might possibly somehow be something out there and to find it I'm going to have to have the state and the city and Milwaukee police department dig through files and turn over

documents and turn over internal documents all on the off chance that there might be something in there?

And Ms. Lewis is correct. Just because the standard is certainly not even if this victim made some complaint 5 or 10 years ago with the police department, and that complaint was against an officer or it was against someone else, just because it was investigated and not charged, for instance, if the officer involved was not sanctioned or not punished or penalized or not brought up on some charges internal, external or otherwise, that certainly is not enough to meet the standard and certainly does not necessarily mean it was a false report? Just because something is not charged, there are dozens of reasons why something is not charged even, though it may, in fact, be true and that does not make it untrue or false allegation.

So bottom line, counsel, how is this not basically just a fishing expedition?"(R.79: 17-18)(Ex.E: 17-18).

In response to the trial court's concerns of this being all just a fishing expedition, trial counsel stated, " Well, something outlined in this police report that's attached to that—to my affidavit...So Leon Carter and Yubastine Mathis were acting about—he just got out from prison in 2003, and they were arguing about her being unfaithful to him and this is on page 4. This is probation officer went to speak with Yubastine Mathis, and I believe this is what probation officer related to what she told. So Mathis told her, which is probation officer, that she did not want to talk to the police because she was abused by the police, and they told her, the police, that she owed them and she had to give him and she refers to like one person "him" and based on clients knowledge looks like the him would be this Detective Luis Johnson of oral sex, so this is on page 4." (R.79:18-

19)(Ex.E: 18-19). Turning to the city attorney, the court asked, " what was the subpoena seeking exactly, since it's not in front of me?", by which the city attorney Ms. Swank answered, " The subpoena seeks: Please bring the internal file regarding a complaint filed by Yubastine Mathis, date of birth 5/9/60, made against Detective Luis Johnson in 2003…Also, there is some information in this report referencing the alleged victim's mental health status…" (R.79: 20-24)(Ex.E: 20-24).

Winding the motion hearing down, the trial court stated for the record, "…Here's the situation. At the moment, I've observed and have not seen enough from the defense. At the moment my inclination is to quash the subpoena. This all strikes me as a fishing expedition. It strikes me as largely baseless based on assumption after assumption. It's based on vague assertions, but I'll do the following:…I'll give the defense time to respond to the motion to quash…The defense is going to need to give me more, in terms of case law and in terms of the relevance, of this potential information and how it's not just a fishing expedition. And I know that's a strong word, and I'm not criticizing Mr. Andriusis, but I'm concerned at the moment it's largely just a fishing expedition.

At one point the city or might have been Ms. Lewis stated the criteria that I need to look at accurately in going back to the prior argument from Mr. Andriusis. I think at one point in time he actually said, well, there may be information in there that may be helpful to the defense. The standard is much higher than may possibly be something, may possibly be helpful. If that was the standard, it would take three or four years to litigate every single case that comes before the court."(R.79: 29-30, 31)(Ex.E: 29-30,31).

On August 6, 2012, trial counsel Andriusis appeared before the trial court to deal with what the court described as "some motion issues." (R.80: 2)(Ex. F: 2).

With respect to the " motion to quash the subpoena," trial counsel stated, " Well Judge, my private investigator, Cindy Papka, took this affidavit. It's written by her, signed by Leon Carter, also attached another affidavit that was taken a little bit earlier by Leon Carter which he—in which he indicated that he has personal knowledge that Yubastine Mathis, the victim in this case, was using psychotropic medications coincidentally about the same time because he was with her at the same time and he saw when she was refilling (sic) prescriptions, so--, the court interrupted, stating, "…same time meaning when?" by which trial counsel answered, " 2002 to 2003. That's when this-- when this complaint against MPD was filed. So--and this additional affidavit just elaborates on his personal knowledge about his and…his personal knowledge what happened between Yubastine Mathis and apparently Detective Johnson. I believe that, in light of these two affidavits, in-camera review would be appropriate, and I think this court can review for --for itself these records and--and make a determination.

If the court would decide that these are not relevant for this case, then no public harm will be—will occur neither for public employee nor nobody, but if this court would find out this—these records has some relevancy to this case, then--then we would like-- then this court would release to us at least relevant parts--at least relevant parts.

I had similar case before in Kenosha County and judge also did the same thing, he did review in camera some other—some other records, and then he—he released to me just parts that he thought was relevant in the case that could be used in the case.

So I believe—I believe that I didn't see those records, but I—I believe this court will see some—will find some more information about alleged victim's mental history and likely about using or maybe abusing psychotropic medications, and in this case also

we have a *Shiffra* motion…and I think it would be kind of relevant with this—with these records as well—if this court will find out, after reviewing in camera that alleged victim, Yubastine Mathis, was abusing or maybe she still is abusing those psychotropical medications, that would also be relevant to the *Shiffra* motion in which I requested that her medical records would be revealed to the defense.

So--so these--this incident--These internal--internal records of Detective Johnson I think would be relevant to this case, and it would be also relevant in making informative decision about *Shiffra* motion as well since--since he knows--since my client knows that she was--she-he saw himself personally that he was--that she was prescribing--that she was filling those psychotropical prescriptions for the psychotropical medications…

I did refer to the case in my--my answer to the state. I did review to the case. *Wisneiwski versus Erickson.* It went to appeal and then finally went to the Wisconsin Supreme Court that overturned decision and allowed to review employee's records. It was also related to the sexual--some kind of sexual investigation of a public employee…The court interrupted, " Let me ask, counsel, what would I potentially find in these records that could be relevant to the trial? From what I know about this case your client--the state can correct me if I'm wrong--has had a long-term relationship with the victim or alleged victim.

It's marked by multiple allegations of domestic violence - related offenses, some prosecuted, some not, some convictions, other cases that did not result in convictions. Correct, Ms. Lewis?" by which the ADA responded, "Correct."

The court went on to ask, "…The motion in the affidavit indicates that the defendant has, at least as far back as 2003 when he notes he was released from prison, he

says he was visiting with Ms.Yubastine Mathis, and supposedly or allegedly there was some contact with this Detective Johnson. Are you trying to hopefully find prior allegations or false allegations or is this more a search for medical records and indications of mental health treatment of use of psychiatric drugs and medications?"

Answering the court, trial counsel asserted, " I think both because I think both—if she was abusing her psychotropical medications at that time and she made this allegation, that might have influenced her to make these allegations and that we see here, and if we see an internal investigation sentence, for example, saying alleged victim, Yubastine Mathis, clearly was abusing psychotropical medications, as her statements are not reliable, she was using those—those medications, I think that would be relevant to this case and maybe then would be relevant to review her whole medical history and to see what medications she's using now, what medications she was using in the summer of those short three months—short three months to see if she was maybe doing the same thing because I did conduct an investigation, and I did provide the state with a statement from a neighbor who lived in the same apartment where they lived and he is not—his statement is completely not consistent. He said they were there, there was no—they were like best friends, they—he—the walls are paper thin…"(R.80: 4-9) (Ex. F: 4-9). Chiming in the ADA asserted, " Well, first time frame issues. Really what we're—to the extent we're talking about the relevance of whether the alleged victim was taking some form of psychotropic medications which, quite frankly, just the fact that someone may be taking psychotropic medications is not in and of itself probative of anything." The court agreed, "Right. That's absolutely correct."

The ADA continued, "...additionally, the inquiry regarding that aspect of this fishing expedition essentially is focused on a 2003 incident. Yes, the state is asking to discuss that and a number of other incidents as other acts or panorama evidence at trial in this matter, but it's an other acts issue.

That time frame is not the time frame that's the subject of the current charges. So it would really be dealing with back in 2003 during other acts time frame, and the court hasn't ruled on the other acts motion. She may have been taking psychotropic medications and does that give us enough information for the court to grant inspection for her medical or psychological records as it pertains to the pending charges. I mean, I think all of this is a huge stretch and highly speculative, and there's nothing to suggest that counsel has any information that would lead him to believe there's outright false allegations either that that evidence of that would be in this report.

If anything, the defendant's own handwritten affidavit that accompanies the most recent responses by the defense...corroborating some form of relationship between this detective and the alleged victim, which is interesting.

I don't know what the nature of the allegations were against the detective, but to the extent that the defendant wants to make some argument like the victim is utterly out of touch with reality, on a bunch of psychotropic medications that she abuses and she just fabricates imaginary relationships with detectives and so forth, the defendant's own statement seemed to dispel that argument. I don't think there's enough here. If the court wanted to err on the side of caution and review the records in camera, the state wouldn't I guess vigorously object to that as an approach, but I am really—I'm a bit confused by the

argument and sort of what the belief is as to relevant or probative information in these records. (R.80: 11-13)(Ex.F: 11-13).

With respect to relevancy of the internal affairs investigation trial counsel stated, " Well, I would like or I think this court maybe would like to see what are in those internal investigations if it's—I didn't see those internal investigations. I don't know what conclusion was drawn by these internal investigation.

If—I mean, apparently victim Johnson was not charged with nothing, so—so either was found it was not sufficient evidence or was unfounded or something. So, if there is some clear evidence or something clearly indicated that she falsified that charge for whatever reason because she was abusing psychotropical medication…then I think it would be relevant to the case because if she made—

If it's clear from that internal investigation that she made false allegation and detective was not charged with nothing which may be—well, it could be suggested that it was false allegation or maybe not.

I don't know because I didn't see those records. Maybe there is some clear information indicating that that was false statement. Maybe she even admitted that she falsified.

Maybe there is some kind of memorandum or interview with Yubastine Mathis where she state that due to my abuse of psychotropical medication I just made up this whole story or whatever—or whatever else, so—for whatever reason.

So, if we find some kind of—this kind of note, interview or memorandum based on Yubastine Mathis says, well, due to my psychotropical medication I falsified this allegation, then I think it would be relevant to this case. I think I would like—I would

like to have this memorandum, and I would ask this court to allow me to use it during the court."(R.80: 15-17)(Ex.F: 15-17).

After hearing the arguments with respect to the states motion to quash, the court ordered, " Erring on the side of caution, and I'm concerned that this basically amounts to a"fishing expedition" and I'm concerned that I've managed to be a judge for seven or seven and a half years with none of these requests and now in the last year and a half mostly in this court but I think also at least once prior to that I've had a number of these similar requests.

I'm concerned that it may be a fishing expedition. I think it's unlikely to yield anything relevant to this case or at least relevant enough to be used during the trial or relevant enough to be turned over by the court, but I'll grant the request. I'll review them in camera. I'll look at all those documents between now and next hearing, the final pretrial which is in a couple weeks, and I appreciate the city producing them, and if they're turned over or if any of them are, we can discuss I think appropriately redacting information depending on what is, if anything, turned over and what may or may not be in the information that's turned over, if anything." (R.80:18-19)(Ex.F:18-19).On November 8, 2012, trial counsel appeared before the court on a hearing by which the court characterized "...on a couple of motion issues." The court stated, "...the defense [had] raised many issues regarding the alleged victim...and possible mental health issues. There was some medical records, some documentation turned over by the court. I don't recall exactly. I think I turned over some of it, but not all of the records I reviewed." (R.84: 2)(Ex.G: 2).

In response ADA Lewis stated, " Yes, your Honor. I may be mistaken, but I didn't think that there were any medical records in this case that were reviewed in camera. I thought it was just--, " the court interrupted, " Oh these were the city reports, by which the state retorted, " Right, yes (R.84: 2-3)(Ex.G: 2-3). The Court interjected, " The police reports, right. Sorry." The state responded, " The internal affairs file." Id.

Clarifying the court stated, " That's correct. Sorry. It was the police reports from the city and from the m.p.d related to the situation with the one police officer and a different alleged sexual assault and some issues along those lines. That's correct. Thank you," by which the state responded, " Correct. Your Honor. And I believe your Honor turned over that entire file which is not exceptionally lengthy, but it turned that over under seal maybe the appearance before the last or something along those lines. So that's been received (R.84:3) (Ex.G:3).

Later on in the hearing the state made the comment, "...Previously the court has it is my recollection denied *Shiffra* motions brought by the defendant (R.84: 15)(Ex.G: 15). With respect to the *Shiffra* motion the Court stated," The defense filed a request basically today, a letter with the court, relative to some alleged mental health issues or some issues that Ms. Mathis may have had in 2003 or 2002. The defense argues that these reports...support strongly the defense position that the alleged victim has serious mental issues. Then it discusses credibility. At the end, the defense also asked the court to reconsider my decision to the *Shiffra* motion. That's denied. I made my ruling. I made a record at that time. I'm not redoing that." (R.84: 17)(Ex.G: 17).

While concluding that it had in fact denied the defenses *Shiffra* motion the court went on to explain, " One of my issues in this case is that the incidents here, the alleged

crimes, kidnapping, sexual assault, strangulation occurred in 2010. My question is the time frame relative to Ms. Mathis potentially having some mental health issues 7 or 8 years earlier in 2003 and 2002 and how that would be relevant to her condition in 2010. Mr. Andriusis." (R.84: 17)(Ex.G: 17).

In response, defense counsel stated, " Well, I don't have access to her records, so I don't know if she—if her condition worsened up or bettered up or what happened with her since that time, but apparently what I," the court interrupted, " But as I recall, when I dealt with the *Shiffra* motion, there was really no basis. It was in my view a fishing expedition based on nothing other than some bald—bold assertions from your client. There was no—it didn't meet the legal criteria of *Shiffra*. I am not revisiting that issue, so let's deal with these 2000-2003 claims. The issue is remoteness in time. In 2002 I wasn't even a judge. Now I've been a judge for 9 years. That's a long time frame. Seven or eight years is a very long time frame. Having a mental health issue in 2003 does not mean it necessarily means that you are faking something or lying about a defendant or lying about allegations 8 years later. So I will hear from the defense." (R.84: 17-18)(Ex.G: 17-18). In response the defense asserted, " Well, as I can say, maybe it's a fishing expedition as this court called my original motion that I filed, but these reports I guess support my fishing expedition and it was one police report attached that were—" the court interrupted, " Well, actually, no, they don't, counsel. That's my point. Because someone had an issue in 2002 does not mean they are having the same issue in 2010. Some mental health issues, you know—for instance someone can be situational depressed. They treat, they go see a doctor, they see a shrink. I'm not making light of this, this is serious, but they go see a doctor, they see a shrink, they are on medication for



# WISCONSIN COURT OF APPEALS

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688
Telephone (608) 266-1880
TTY: (800) 947-3529
Facsimile (608) 267-0640
Web Site: www.wicourts.gov

## DISTRICT I

November 5, 2015

*To:*

Hon. Ellen R. Brostrom
Milwaukee County Circuit Court
821 West State Street
Milwaukee, WI 53233

John Barrett, Clerk
Milwaukee County Circuit Court
821 W. State Street, Room 114
Milwaukee, WI 53233

Karen A. Loebel
Asst. District Attorney
821 W. State St.
Milwaukee, WI 53233

Dennis Schertz
Schertz Law Office
P.O. Box 133
Hudson, WI 54016

Gregory M. Weber
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Leon G. Carter, #167725
Waupun Correctional Inst.
P.O. Box 351
Waupun, WI 53963-0351

You are hereby notified that the Court has entered the following order:

2014AP1459-CRNM     State of Wisconsin v. Leon G. Carter
(L.C. #2011CF3689)

Before Curley, P.J., Kessler and Brennan, JJ.

Leon G. Carter appeals from convictions for six felonies, including second-degree sexual assault, kidnapping, and strangulation. Carter's postconviction/appellate counsel, Dennis Schertz, has filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967), and WIS. STAT. RULE 809.32 (2013-14).[1] Carter filed a response, and Schertz filed a supplemental no-merit report in response to an order from this court. We have independently reviewed the

---

[1] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted

record, the no-merit report, the supplemental no-merit report, and Carter's response as mandated by *Anders*. We conclude that there is no issue of arguable merit that could be pursued on appeal. We therefore summarily affirm.

The amended criminal complaint charged Carter with six felonies, including four counts of second-degree sexual assault (mouth to penis, penis to vagina, hand to breast, and finger to anus), kidnapping, and strangulation. All six counts involved the same victim, a woman named Smith,[2] with whom Carter was romantically involved for over ten years. The complaint stated that Carter "has severely physically, sexually and psychologically abused [Smith] for over ten years and treats her as his 'property.'" The complaint indicated that Carter had been criminally charged with sexually assaulting Smith in 2002 and 2004, and that he ultimately pled guilty to battering and intimidating Smith in those cases. Carter served time in prison for those convictions. In June 2010, shortly after his most recent release from prison, Carter reunited with Smith and they went to the transitional living center where he was living. Smith later told police that she was held there against her will over a period of two months, during which she was beaten and sexually assaulted.

From the outset of the case, Carter's defense was that he did not hold Smith against her will and that she was lying about being abused. To demonstrate that Smith was incredible, Carter sought information about Smith's past mental health treatment and a prior allegation against a police detective that resulted in an internal affairs report. Ultimately, the trial court ruled that information about those incidents could not be admitted at trial. In addition to ruling

---

[2] The name Smith is a pseudonym that we will use in this opinion to protect the victim's identity.

on motions related to Smith's mental health history and the internal affairs report, the trial court granted the State's motion to admit evidence of Smith's prior abuse allegations against Carter, including those that resulted in criminal convictions.

The case was tried to a jury over five days and included extensive testimony from Smith. Carter chose not to testify. Carter was ultimately found guilty of all six counts and sentenced to a total of sixty-three years of initial confinement and twenty-three years of extended supervision, including: four consecutive terms of fifteen years of initial confinement and five years of extended supervision; one consecutive term of three years of initial confinement and three years of extended supervision; and one concurrent term of fifteen years of initial confinement and five years of extended supervision.[3]

Postconviction/appellate counsel filed a lengthy no-merit report that summarizes the testimony presented and the myriad motions and issues the trial court decided, including: (1) denial of Carter's *Shiffra*[4] motion to introduce Smith's mental health records; (2) granting of the State's motion to introduce other acts evidence concerning Carter's prior assaults of Smith; (3) denial of Carter's motion to introduce evidence that Smith did not appear to testify at the trial of another man alleged to have battered her; (4) deciding to dismiss one juror who failed to show up for the fourth day of trial and a second juror who had a previously scheduled doctor's appointment that would have interfered with jury deliberations; (5) deciding not to declare a

---

[3] The jury found Carter guilty of three counts of second-degree sexual assault with use of force, one count of second-degree sexual assault causing injury to a sex organ, one count of strangulation and suffocation, and one count of kidnapping, contrary to WIS. STAT. §§ 940.225(2)(a), 940.225(2)(b), 940.235(1), and 940.31(1)(b) (2010-11).

[4] *See State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), *abrogated by State v. Green*, 2002 WI 68, 253 Wis. 2d 356, 646 N.W 2d 298.

Exhibit A:3

3

mistrial when a State's witness referred to Carter as a sex offender; (6) denial of Carter's motion to introduce character evidence that Smith is untruthful; (7) denial of Carter's motion for a mistrial based on allegations that the trial court showed too much sympathy to Smith; (8) rejecting Carter's suggestion that new trial counsel may need to be appointed; and (9) denial of Carter's motion for a mistrial based on the fact that a bailiff answered the jury's question concerning the need for a unanimous verdict. The no-merit report concluded there would be no arguable merit to assert that Carter did not receive a fair trial, that he was denied the effective assistance of trial counsel, or that the sentence was excessive. This court directed postconviction/appellate counsel to provide additional analysis of two issues: the State's other acts motion and the State's witness's suggestion that Carter was a sex offender. We have carefully reviewed the record, the no-merit report, and the supplemental no-merit report, as well as Carter's response.[5] This court agrees with postconviction/appellate counsel's thorough description and analysis of the potential issues identified in the no-merit report and supplemental no-merit report, and we independently conclude that pursuing those issues would lack arguable merit. In addition to agreeing with postconviction/appellate counsel's description and analysis, we will briefly discuss several of the identified issues.[6]

---

[5] Carter's response does not raise specific issues. He explains that he lacks legal training and has had to rely on postconviction/appellate counsel's analysis of his case. He also complains that the no-merit report "relied on unexplained assumptions and allegations that were conclusory." This court concluded that additional analysis of two key issues would be helpful, and we directed counsel to more fully develop those issues. Counsel's additional analysis convinces us that there would be no merit to pursuing a motion or appeal based on those or other previously identified issues.

[6] This court will not attempt to address every issue that arose in this case. The thirty-nine page no-merit report and the twelve-page supplemental no-merit report provide an exhaustive summary of the numerous motions and rulings that occurred before and during trial. As noted, we agree with counsel's analysis and conclusion that none of the issues identified presents an issue of arguable merit.

We begin with the State's other acts motion. The State sought to admit evidence of Carter's prior abuse of Smith, in part to demonstrate the context of the offenses. *See State v. Hunt*, 2003 WI 81, ¶58, 263 Wis. 2d 1, 666 N.W.2d 771 (explaining that other acts evidence can be admitted "to show the context of the crime and to provide a complete explanation of the case," such as explaining abuse that took place in a home and the authority and control that an abuser exercised over his or her victims). The trial court engaged in the requisite analysis under *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Although the trial court did not explicitly discuss whether the danger of unfair prejudice was outweighed by the probative value of the proffered evidence, an appellate court will "independently review the evidence to determine if it supports the trial court's decision to admit the other crimes evidence." *See State v. Shillcutt*, 116 Wis. 2d 227, 236, 341 N.W.2d 716 (Ct. App. 1983). Having reviewed the record, we conclude that there would be no arguable merit to assert that the trial court's decision was unsupported by the record. Further, the trial court that actually tried the case reviewed the prior judge's ruling and explicitly addressed all three prongs of the *Sullivan* test, and it also gave the appropriate cautionary instructions.[7] We agree with postconviction/appellate counsel that there is no arguable basis to pursue an appeal based on the trial court's decision to allow the admission of other acts evidence.

Next, we consider the testimony of a Department of Corrections agent who was called by the State. On direct examination, as the agent was explaining that Carter was on her caseload and that she is a sex offender specialist, the agent added that Carter "has a prior sexual assault,

---

[7] The Honorable David Borowski decided the pretrial motions and the Honorable Ellen R. Brostrom presided over the jury trial and sentenced Carter.

but he was actually on [supervision] for two counts of battery." Later, the agent referred to Carter and the other men she supervised as "sex offenders." Trial counsel sought a sidebar conference, after which the State clarified with the witness that the Department may put people under sex offender supervision "even if they were not in that instance convicted of a sex offense." The State further clarified that Carter was on supervision for batteries. Later, outside the jury's presence, trial counsel told the trial court that he thought the State had "cleaned up" the problem and that there was no need for a mistrial. The trial court recognized that trial counsel was not seeking a mistrial, but it nonetheless considered whether one should be granted and concluded that a mistrial was not warranted because the jury had already heard "a lot of evidence of sexual assault by Mr. Carter against [Smith], some charged and some as prior bad acts" and it was unlikely that the reference to sex offender supervision "would rise to the level of any kind of prejudice that would warrant a mistrial." Before the case was submitted to the jury, trial counsel told the trial court that he did not want to have a curative instruction. We agree with postconviction/appellate counsel that there is no arguable basis to pursue a motion or appeal based on the witness's statements, the trial court's handling of the issue, or trial counsel's decision not to seek a curative instruction concerning this issue.

This court has also considered trial counsel's performance prior to and at the trial. We concur with postconviction/appellate counsel's assessment that Smith was a particularly challenging witness to control, as she was extremely emotional and frequently volunteered information beyond that called for by particular questions. We have not identified any trial counsel actions or inactions that would rise to the level of ineffective assistance of counsel.

Finally, we turn to the sentencing. We conclude that there would be no arguable basis to assert that the trial court erroneously exercised its sentencing discretion, *see State v. Gallion*,

2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197, or that the sentences were excessive, *see Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).

At sentencing, the trial court must consider the principal objectives of sentencing, including the protection of the community, the punishment and rehabilitation of the defendant, and deterrence to others, *State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76, and it must determine which objective or objectives are of greatest importance, *Gallion*, 270 Wis. 2d 535, ¶41. In seeking to fulfill the sentencing objectives, the trial court should consider a variety of factors, including the gravity of the offense, the character of the offender, and the protection of the public, and it may consider several subfactors. *State v. Odom*, 2006 WI App 145, ¶7, 294 Wis. 2d 844, 720 N.W.2d 695. The weight to be given to each factor is committed to the trial court's discretion. *See Gallion*, 270 Wis. 2d 535, ¶41.

In this case, the trial court applied the standard sentencing factors and explained their application in accordance with the framework set forth in *Gallion* and its progeny. The trial court discussed the severity of the abuse Smith suffered. It also discussed Carter's criminal history, which included a conviction for first-degree sexual assault of a child, prior convictions involving Smith, revocations of supervision, and witness intimidation. The trial court concluded that in order to prevent Smith from victimizing Smith or others again, it needed to impose a sentence that would "not allow Mr. Carter to see the light outside of a prison."

Our review of the sentencing transcript leads us to conclude that there would be no merit to challenging the trial court's compliance with *Gallion*. Further, there would be no merit to assert that the sentence was excessive. *See Ocanas*, 70 Wis. 2d at 185. While the sixty-three-year term of initial confinement is significant and is, in all likelihood, a life sentence, this court

recognizes that Carter was convicted of six serious felonies. He was facing over two hundred years of imprisonment. The sentence imposed was well within the maximum sentence and we discern no erroneous exercise of discretion. *See State v. Scaccio*, 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449 ("A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable.").

Our independent review of the record reveals no other potential issues of arguable merit.

Upon the foregoing, therefore,

IT IS ORDERED that the judgment is summarily affirmed. *See* WIS. STAT. RULE 809.21.

IT IS FURTHER ORDERED that Attorney Dennis Schertz is relieved of further representation of Carter in this matter. *See* WIS. STAT. RULE 809.32(3).

---

*Diane M Fremgen*
*Clerk of Court of Appeals*



OFFICE OF THE CLERK
# WISCONSIN COURT OF APPEALS
110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WISCONSIN 53701-1688
Telephone (608) 266-1880
TTY. (800) 947-3529
Facsimile (608) 267-0640
Web Site   www.wicourts.gov

## DISTRICT I

July 13, 2015

*To*:

Hon. Ellen R. Brostrom
Milwaukee County Circuit Court
821 West State Street
Milwaukee, WI 53233

John Barrett, Clerk
Milwaukee County Circuit Court
821 W. State Street, Room 114
Milwaukee, WI 53233

Karen A. Loebel
Asst. District Attorney
821 W. State St.
Milwaukee, WI 53233

Dennis Schertz
Schertz Law Office
P.O. Box 133
Hudson, WI 54016

Gregory M. Weber
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Leon G. Carter, #167725
Waupun Correctional Inst.
P.O. Box 351
Waupun, WI 53963-0351

You are hereby notified that the Court has entered the following order:

2014AP1459-CRNM    State of Wisconsin v. Leon G. Carter
(L.C. #2011CF3689)

Before Curley, P.J.

Leon G. Carter appeals from convictions for six felonies, including sexual assault, kidnapping, and strangulation. Carter's postconviction/appellate counsel, Dennis Schertz, has filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967), and WIS. STAT. RULE 809.32 (2013-14).[1] Carter filed a response. We have independently reviewed the record, the no-merit report, and Carter's response as mandated by *Anders*. We now direct counsel to file

---

[1] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

**Exhibit J:1**
Case 2:17-cv-01497-PP    Filed 10/30/17    Page 34 of 62    Document 1

a supplemental report addressing several issues. At the outset, we emphasize that we have not determined whether there is arguable merit to any of the issues noted below or to the other issues identified in the no-merit report; we are directing counsel to file a supplemental report to assist this court in its analysis.

First, Attorney Schertz identifies as a potential appellate issue the trial court's decision to grant the State's other acts motion. In a single paragraph of analysis, counsel concludes that "[t]here would be no merit to a motion for new trial based upon the claim that the trial court erroneously granted the State's 'other acts' motion." This court requires additional analysis of this issue. We direct counsel to cite "the principal cases and statutes and the facts in the record that support the conclusion that the [issue] is meritless." *See McCoy v. Court of Appeals*, 486 U.S. 429, 440 (1988). We also direct counsel to specifically address, with references to the record and authority: (1) what "other acts" the trial court ruled could be admitted at trial (*i.e.*, whether the trial court's ruling included everything referenced in the State's seventy-three pages of attachments); (2) whether the trial court's lack of an on-the-record prejudice analysis raises an issue of arguable merit; (3) whether Carter was unduly prejudiced by the admission of the other acts evidence; (4) whether all of the "other acts" that were introduced at the trial were covered by the trial court's other acts ruling; and (5) whether trial counsel provided ineffective assistance by not objecting to the admission of certain other acts evidence during the trial.

Second, Attorney Schertz identifies as a potential appellate issue testimony from a Department of Corrections agent identifying Carter as a convicted sex offender. Counsel does not cite any case law in his two-paragraph analysis of this issue. Additional analysis is necessary. In addition to citing applicable case law and facts in the record, *see id.*, we direct counsel to specifically address: (1) whether there would be potential merit to assert that trial

2

counsel provided ineffective assistance by not objecting sooner and/or moving for a mistrial; and (2) whether there would be any arguable merit to challenge the trial court's analysis that it would not have granted a mistrial even if Carter had formally moved for it.

If after examining these issues counsel identifies an issue of arguable merit, then rather than filing a supplemental no-merit report as outlined above, counsel should voluntarily dismiss this appeal and request an extension of time in which to file a merit appeal or a postconviction motion.

Therefore,

IT IS ORDERED that within thirty days of the date of this order, counsel shall file either a supplemental no-merit report, or a motion to dismiss the appeal and extend the time for filing a merit appeal or a postconviction motion.

*Diane M Fremgen*
*Clerk of Court of Appeals*

3



# Supreme Court of Wisconsin

**110 EAST MAIN STREET, SUITE 215**
**P.O. BOX 1688**
**MADISON, WI 53701-1688**

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

May 5, 2016

**To:**

Hon. Ellen R. Brostrom
Milwaukee County Circuit Court Judge
821 W. State Street
Milwaukee, WI 53233

John Barrett
Milwaukee County Clerk of Circuit Court
821 W. State Street, Room 114
Milwaukee, WI 53233

Karen A. Loebel
Asst. District Attorney
821 W. State St.
Milwaukee, WI 53233

Dennis Schertz
Schertz Law Office
P.O. Box 133
Hudson, WI 54016

Gregory M. Weber
Assistant Attorney General
P.O. Box 7857
Madison, WI 53707-7857

Leon G. Carter 167725
Waupun Corr. Inst.
P.O. Box 351
Waupun, WI 53963-0351

You are hereby notified that the Court has entered the following order:

No. 2014AP1459-CRNM    State v. Carter  L.C.#2011CF3689

A petition for review pursuant to Wis. Stat. § 808.10 having been filed on behalf of defendant-appellant-petitioner, Leon G. Carter, and considered by this court;

IT IS ORDERED that the petition for review is denied, without costs.

Roggensack, C.J., did not participate.

Diane M. Fremgen
Clerk of Supreme Court

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001



Scott S. Harris
Clerk of the Court
(202) 479-3011

November 28, 2016

Mr. Leon Carter
Prisoner ID # 167725
Waupun Corr. Inst.
P.O. Box 351
Waupun, WI  53963

> Re:  Leon G. Carter
>     v. Wisconsin
>     No. 16-6275

Dear Mr. Carter:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*Scott S. Harris*

**Scott S. Harris**, Clerk

Exhibit O

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LEON CARTER,

## PETITIONER,

v.                                          **Case No.**

BRIAN FOSTER,

## RESPONDENT.

# MOTION FOR APPOINTMENT OF COUNSEL

**Leon G. Carter,** petitioner in this action, respectfully moves this Court for the entry of an Order pursuant to 28 U.S.C. §2254(h), 18 U.S.C. §3006A, and Rule 8(c) of the Rules Governing Section 2254 Cases In The United States District Courts, appointing counsel to represent him for purposes of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254, filed simultaneously with this motion.

AS GROUNDS THEREFOR, petitioner respectfully asserts as follows:

1.      Petitioner is in custody of the State of Wisconsin pursuant to a judgment of conviction entered on 2-19-2013, sentencing him to a period of 63 years imprisonment following conviction for the crimes of (3) Counts of second-degree sexual assault w / use of force. (1)

Count of second-degree sexual assault causing injury to a sex organ. (1) Count of strangulation & suffocation / (1) Count kidnapping

2.    Simultaneously with this motion, petitioner filed a Petition under 28 U.S.C. §2254 for a writ of habeas corpus, claiming that his conviction was based upon a denial of his rights to the effective assistance of counsel on his first appeal as of right and his fourteenth amendment right to a meaningful appeal, when the Wisconsin Court of Appeals accepted the findings of appellate counsel's inadequate no-merit report without independently reviewing the claims which alleged (1) trial court erred in denying Carter's request to review the alleged victim's medical records (2) trial court erred in failing to conduct a retrospective inquiry and (3) trial court erred in denying Carter's motion for a mistrial based on *ex parte* communications with the bailiff.

3.    Petitioner files simultaneously with this motion a request for leave to proceed in *forma pauperis,* the allegations of which also form the basis for this motion to appointment of counsel. For the reasons stated in that document, Petitioner is unable, due to his poverty, to pay for counsel to represent himself in these habeas proceedings.

4.    It is in the interest of justice to appoint petitioner counsel, he have been denied his effective assistance of counsel on his first appeal, **Evitts V. Lucey, 469 U.S. 387, (1985).** The SEVENTH CIRCUIT already acknowledges that Habeas Corpus is one of the most complex areas of America Law. **Holmes v. Buss, 506 F. 3d 576, 579 (7ᵗʰ Cir. 2007).**

5.    Adding to the complexity of the issues presented are the requirements of the Antiterrorism & Effective Death Penalty Act of 1996, which even the courts find difficult to sort out.

6. Petitioner is not a lawyer and is not trained in legal argument. Accordingly, he would be unable to adequately present his arguments to the court and to assist the court in addressing his claims without the assistance of counsel.

7. There will be letters petitioner wrote and received from lawyers and law firms that he asked to represent him *Pro Bono*. (See attachment EX. 1-4).

For these reasons, petitioner respectfully asks that the Court enter an Order pursuant to 29 U.S.C. §2254(h), 18 U.S.C. §3006A and Rule 8(c) of the Rules Governing Section 2254 Cases appointing a qualified attorney to represent him regarding his habeas petition. See also Battle v. Armatrout, 902 F. 2d 701, 702 (8th Cir. 1990) ("appointment of counsel would benefit ... the court by allowing counsel to develop Battle's arguments and focus the court's analysis"); Taylor v. Pegelow, 335 F. 2d 147 (4th Cir. 1964) ("Innumerable difficult questions and inordinate waste of time of judges and [state] lawyers ... might ... have been avoided if the District Court had appointed counsel").

Dated at __October 27th, 2017__

Respectfully submitted,

Leon Carter
__WAUPUN CORRECTIONAL INST.__
__P.O. Box 351__
__WAUPUN, WI 53963__

6 months or a year and it goes away. It is situational relative to a death in the family, or a child being in the hospital, or losing a job, or financial issues, or allegedly being abused by someone else and it's situational. That doesn't mean the same thing is occurring 8 years later. Why doesn't the state chime in please." (R.84: 18-19)(Ex.G: 18-19).

Chiming in the state asserted, " Yeah. Plus I think the renewed motion in addition to the issue that the court points out about remoteness in time, it again does not meet the standard in *Shiffra* and *Green* in that the defendant is not specifically—does not cite to specific information that would lead the court to believe that there are some mental health records out there somewhere that contain information that would likely be material to the defendants defense in the case. I don't have the language in front of me. That's my paraphrase of it. But there's a materiality requirement and the basis that's set forth has to be specific enough for the court to have some reasonable belief that there records contain this potentially exculpatory evidence, and I think general claims of she had mental issues is not enough." (R.84: 18-19)(Ex.G: 18-19).

The court agreed, " Right. Beyond everything I've already said, there has to be specificity and what the state says is absolutely true. An allegation of mental health issues—I mean again let's use my example. *If someone is being treated for depression and they are taking prozac,* again I'm not making light of that, that in most cases has nothing to do with anything because it doesn't affect that person's ability to relay event's to the police, it doesn't appreciate or effect that person's ability to, you know, frankly just understand reality, to function day to day, to work, to have a job, to give a police officer a police report. If you had evidence of someone having, you know, a psychotic disorder or being detached from reality or hearing voices, that might be a different situation. Here if

there's anything it's mild assertions and limited indication of mental health issues 7 or 8 years before the alleged multiple defenses by Mr. Carter. (R.84:19-20)(Ex.G:19-20). The state added, " And I think even to the extent the defense would attempt to argue that, hey, judge, you are letting in other acts evidence that's from maybe this time period, this somehow might have information bearing on the credibility of that evidence, and the credibility of that evidence is something that the jury is going to weigh in how it impacts whether the state has proven the current charges." (R.84:20-21)(Ex.G:20-21). The court then stated, " If there's a discussion during the case, during the victim or alleged victim's testimony of mental health issues if she's on her medication in 2010 when these crimes allegedly occurred, it might come out. You know, one of the situations is when it comes to motion in limine, there are some things that a court can rule on in advance...So there may be some discussion at the trial of the victim or alleged victim's mental health issues. It may come out, it may be relevant. This is not a blanket bar on it because some of it might be discussed. It might be again relevant to some degree. But this incident, you know, and what the defense provided today was, you know, not even-- I would not say it's conclusive, but certainly an indication that Ms. Mathis in 2003, 7 years before this offense, that she had a mental health stay at Sinai Samaritan. Okay. Fine. She also may have had a mental health stay in October of 2002 at a mental health facility. Again that's 8 years before these offenses.

The one other issue that the defense presents in the letter motion is—well, let me step back a minute. In some of the other documents that were turned over and that the defense highlights today, in 2002, 8 years prior to this incident, *Ms. Mathis was being treated for depression* and sleep problems. You know, that's unfortunate if that's what

occurred, but it certainly does not—it's not relevant to what she was doing in 2010 and whether or not Mr. Carter committed multiple felonies against her. *She was treated for depression* apparently and for sleeping problems. You know, big deal. I saw a stat somewhere that one in ten people in the United States or it might have actually been one in five have issues with depression or sleep problems. These two things in and of themselves is nothing.

The only thing that's left that the defense provides or discusses is there's this part of a letter—I don't have all of it, but Ms. Mathis allegedly may have authored a typewritten letter where she talks about Detective Johnson, talks about this incident in 2002, talks about the situation where Detective Johnson was allegedly harassing her again 8 years prior to this incident and then it's—there's a statement here, quote, Detective Johnson told me that, quote, I could kill Leon and get away with it because it's documented that he had violently abused me, end quote. I will ask the defenses what you want to introduce about that and how that's relevant." (R.84:22-23)(Ex.G:22-23).

In response, trial counsel stated, " Well...it looks like this is her diary and it looks like she has this mental state or mental understanding and it is not clear that was told by Detective Johnson. At least that's what she writes here. Or maybe it was result of her mental health problems on that time, that she had this understanding that she could do to Leon whatever she wants".  (R.84: 23)(Ex.G: 23).

On appeal, post-conviction/appellate counsel Dennis Schertz filed a no-merit report summarizing the testimony presented and the myriad motions and issues the trial court decided, including: the denial of Carter's *Shiffra* motion to introduce Mathis's mental health records, *see* (Ex. H:) and Carter filed his response, arguing that " attorney

Schertz no-merit report/brief does not follow or meet the mandate of Wis. Stat. Rule 809.32, as explained in McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 442-444(1988), because attorney Dennis Schertz relied on unexplained assumptions and allegations that were conclusory during the argument portion of the no-merit brief..."(Ex. I:).

On July 13, 2015, the court of appeals for district one entered an order directing counsel to file a supplemental report addressing several issues. (Ex. J :1-3).

In the court of appeals order below, the court specifically directed counsel to file a supplemental report to assist it in the analysis of a potential appellate issue with respect to the trial courts grant of the other acts motion. With respect to this issue the court of appeals noted "In a single paragraph of analysis, counsel concluded that there would be no-merit to a motion for a new trial based upon the claim that the trial court erroneously granted the other acts motion...[and that] it was devoid of principal cases and statutes and the facts in the record that support the conclusion that the issue is meritless, citing McCoy v. Court of Appeals, 486 U.S. 429, 440(1988)."(Ex.J :2).

In addition the court of appeals below also directed counsel to specifically address, with references to the record and authority addressing whether there would be potential merit to assert that trial counsel provided ineffective assistance by not objecting sooner and/or moving for a mistrial; and whether there would be any arguable merit to challenge the trial court's analysis that it would not have granted a mistrial even if Carter had formally moved for it."(Ex.J :2-3).

Appellate counsel Dennis Schertz complied with the court of appeals specific directive and filed a supplemental report.(Ex. K). Because post-conviction/appellate

counsel was only directed to supplement those issues mentioned in the court of appeals order, the remaining nonfrivolous issues set out in Dennis Schertz's original no-merit report were accepted as argued. For example, under the heading "Whether Mr. Carter received a fair trial at which there was sufficient evidence for a finding of guilt..." that Mr. Carter might...allege that he did not receive a fair trial because of decision made by the court at or before his jury trial. The two most significant pretrial motions were...the defenses *Shiffra* motion."(Ex.H :32-33).

Post-conviction/appellate counsel went on to argue that "while there was some confusion as to when the original court denied the *Shiffra* motion, it reiterated its reasons for denying that motion at the November 8, 2012 motion hearing when it stated that there was no basis for it and did not meet the legal criteria of *Shiffra*, that it was just a fishing expedition based upon non-specific, bald assertions by the defense, and that it was primarily an issue of remoteness: that just because someone may have had a mental issue in 2002 or 2003 did not mean they had that same issue in 2010. A review of the defense motion itself and the supporting affidavit of Mr. Carter provide no doubt that the court's decision to deny the motion was proper under the applicable law and there would be no merit to a claim that the court's decision was erroneous as a ground for a motion for a new trial."(Ex. H.: 33).

On appeal the court of appeals, district one acknowledged that "...post-conviction/appellate counsel filed a lengthy no-merit report that summarized the ...issue the trial court decided, including (1) denial of Carters *Shiffra* motion to introduce Mathis's mental health records..." *see*, (Ex.A:3) but then proceeded to conclude in a footnote that, "[it] would not attempt to address every issue that arose in this case.

[*Shiffra* issue]...As noted, we agree with counsel's analysis and conclusion that none of the issue identified presents an issue of arguable merit."(Ex.A:4).

Carter then petitioned the Wisconsin Supreme Court raising the issue that "the court of appeals erred thereby depriving Carter of his right to a meaningful first appeal as of right and his right to effective assistance of post-conviction/appellate counsel when it accepted post-conviction/appellate counsel's no-merit report despite Carter's presentation of arguably meritorious issues for review." See , *Carter's Petition for Review* (Ex. M: 3-5).

Subsumed in that claim Carter argued that " the trial court violated Carter's fourteenth amendment rights to due process of law by failing to grant him a fair trial and by preventing him from presenting a full defense by denying Carter's *Shiffra* motion on the ground that the motion was a fishing expedition based on nothing." See (Ex. M: 5-11).

The Wisconsin Supreme Court denied review on May 5, 2016. *See,* (Ex.N:).

**Retrospective inquiry**

On 12/11/2012, Leon Carter appeared before the court being represented by Attorney Julius Andriusis who stated for the record, "...well, just a few more things I would like to place on the record. I met with client yesterday, we discussed the case and progress of the case. Client—just I would like to make record of the case, Judge. So client expressed some dissatisfaction with me, maybe I have to let you go. So this was read to me and--," Counsel was interrupted by the court, " We can address that right now.

Your client doesn't make that call. I do. You are not being released from your duties in this case. This case is a year and a half old, you're the second attorney on this case, it is proceeding to trial on Monday." (R.86: 5-6)(Ex. O:5-6).

On December 17, 2012, Leon Carter again appeared before the court being represented by Julius Andriusis. At the hearing defense counsel addressed the court, "Judge, we had a little I guess misunderstanding yesterday with client. I don't know if he would like to make a record. But I did receive some additional evidence on Friday particularly of some phone calls, and I was reviewing the many phone calls and I went to visit my client yesterday in the House of Correction to discuss these additional things, as well final preparation for this jury trial, and client indicated that he is firing me and I will not—no longer will be representing him so..." The court interrupted, " Well, that's fine as long as he's hired an attorney and that attorney is ready to proceed today. The court is disinclined to play this kind of game, which is exactly what it is. We addressed this a week ago. There's no way on earth your client gave you new evidence on a case that is a year and a half old and has been adjourned three or four times, and if he did, which I doubt, then it's a situation of his own making. Where does the state stand on this." (R. 87: 2-3)(Ex.P: 2-3).

In stating its position the state asserted on the record, " Well... the state is prepared to proceed. This is the matter, your honor where at the point in time where this was in for a final pretrial and the speedy was set, the defendant wasn't at that time inclined to waive his right to a speedy trial and that compelled counsel to compel its witnesses to appear. I have a law enforcement witness as the court is well aware and counsel is aware who has rearranged a vacation schedule and will be chairing this trial during her scheduled

vacation and had to make arrangements to cancel a flight, incurred I believe a $75 fee at minimum in canceling. And the only reason she was able to get that type of cancellation accommodation is because she was subpoenaed in a court case. But in any event somewhat extraordinary measures were taken to insure the case would be tried today. The defendant at the time when there was opportunity perhaps to, you know...waive his speedy demand or deal with issues with his counsel, they weren't raised then.

I would note the items of, quote, evidence that were referred to, I think counsel is referring to some calls that the defendant had made on a previous case. As the court I'm sure recalls, there were two previously fully litigated cases involving this defendant and this victim with somewhat similar allegations involved. One of them the defendant had significant contact with the victim while he was incarcerated and was by my understanding attempting to persuade her not to cooperate in that particular case. The actual phone calls themselves were not requested previously. I did find them in a file when we did the file review and I offered them to counsel. I don't intend on using any of those phone calls specifically at this point in my case in chief if review of those calls is the concern. To my knowledge those calls are inculpatory. Meaning they tend to be more harmful to the defendant. I'm not aware of them containing any information that could possibly be exculpatory as to whether he committed the acts that are at issue in this case which happened a number of years later." (R. 87: 3-4)(Ex. P:3-4).

In concluding the hearing, the court stated, " Right, it stays on for trial. We are going to look for a spin court. I have a homicide that apparently is going and that will probably take precedence. If that one does not go, I will try this. We will start looking for a spin court. Everything the state had indicated is absolutely accurate, I made it very clear

to the defense twice that this case was not going to be adjourned. As Ms. Lewis points out, counsel, it was your client who would not waive the speedy trial demand when the state pointed out that their witness had to—had plans out of state. And a first for me in 10 years on the bench, the state had a cop or an officer void a vacation to be here. This case is going to trial. Good try. We will recall it when we are ready." Defense counsel tried to speak, " Judge.." but was silenced by the court, " I don't want to talk about it, counsel. We will recall it when we are ready. We are done, counsel." (R. 87: 4-5)(Ex. P: 4-5).

On October 13, 2014, post-conviction/appellate counsel Dennis Schertz filed his no-merit report and in the "discussion" section argued pertaining to this issue the following, " Mr. Carter might also argue that he should be granted a new trial because the court would not allow him to fire his attorney, twice, a week before the first day of trial and on the first day of trial itself. At the December 11, 2012 pretrial hearing defense counsel told the court that his client had expressed some dissatisfaction with him and might have to let him go, at which time the court told him that it would make that decision, not the client, that the case was a year and a half old, defense counsel was the second attorney on the case, and it would be proceeding to trial the following week.

When defense counsel told the court, on the morning of the first day of trial, that Mr. Carter had fired him, the court said that that was fine as long as he had hired a new attorney who was ready to proceed that day and that it was not inclined to play any sort of game with Mr. Carter. On neither instance did defense counsel provide the court with any legitimate reason to allow him to withdraw at the last minute, as a result of which the

court was within its discretion in denying these requests for withdrawal of counsel." See (Ex. H: 34-35) Appellate counsel's no-merit brief.

On appeal the court of appeals, district one acknowledged that "...post-conviction/appellate counsel filed a lengthy no-merit report that summarized the ...issue the trial court decided, including ;(8) rejecting Carter's suggestion that new trial counsel may need to be appointed, but then proceeded to conclude in a footnote that, "[it] would not attempt to address every issue that arose in this case. [*Retrospective inquiry*]...As noted, we agree with counsel's analysis and conclusion that none of the issue identified presents an issue of arguable merit."(Ex.A:4).

Upon the court of appeals conclusion that their independent review of the record reveals no other potential issues of arguable merit, thereby relieving Dennis Schertz of further representation of Carter on appeal, Carter filed a petition for review with the Wisconsin Supreme Court. See, (Ex. M).

In that petition Carter argued, "the court of appeals erred thereby depriving Carter of his right to a meaningful first appeal as of right and his right to the effective assistance of post-conviction/appellate counsel when it accepted counsel's no-merit report despite Carter's presentation of arguably meritorious issues for review being...(2) the circuit court violated Carter's Sixth Amendment right to effective assistance of counsel when it failed to inquire into the factual basis for Carter's implicit request for a new trial counsel, which required retrospective inquiry." See, (Ex.M:15-17).

The Wisconsin Supreme Court denied review on May 5, 2016. See, (Ex.N:).

**Ex Parte Communication**

On December 21, 2012, defense counsel appeared on behalf of the petitioner, Leon Carter. Acknowledging that the jury who had deliberated and reached a verdict the court stated, " If at 4:30 or 4:40, then [the jury] haven't reached a verdict, I think we're going to need to bring everyone in open court and figure out how the jury wants to handle it. For example, they may say can we come back January 2 to finish, can we come back December 28. I mean there is all sorts of-- you know, I mean I hope we won't get to that juncture. I feel we have given them plenty of time to deliberate. They left the courtroom at 11:09. They have all day long with lunch in. But I think if we end up in that eventuality we probably are going to have to get their input before we can make a decision.

So if everyone could check in with the court at 4:30 at the outside. Okay. Thank you again." (R.96: 82) (Ex.Q:82).

After the jury returned verdicts of guilty and were excluded from the courtroom the court stated for the record, "I do also want to note for the record that we did receive the following handwritten question over the lunch hour. It says: What happens if we do not unanimously agree on one of the six counts, and it is signed by the foreperson. I think deputy Terrell responded in my absence "you need to just work and reach a unanimous verdict, " is that correct, deputy?"

In response to the court's question the deputy responded, " It was actually me, deputy Kashishias..." The court interjected, "I would note that's not my standard practice. I would not have responded to this without assembling you. The reality is we probably all would have come up with saying the same thing and in fact that's the jury instruction, but I did want to put that on the record. I don't think that it changes the integrity of the verdicts that were received..."(R.96: 87-88)(Ex.Q:87-88).

Addressing the court, defense counsel stated, " Well, that's ... I know that's any kind of practice. Only court should issue answers to the jurors. So I—well, for the record I, I guess I would move for mistrial. I repeat my motion for mistrial based on interference with that juror deliberation process." (R.96:88)(Ex.Q:88).

Denying that motion, the court concluded, "There is no prejudice to the defense. That's what the jury instructions say. The jury has to reach together to reach unanimous verdict. We undoubtedly would have said the same thing to them, but so motion would be denied. I don't think there is any prejudice.

All right we'll get our sentencing date. It needs to be like a Friday afternoon..." (R.96: 88-89)(Ex.Q:88-89).

On appeal, the petitioner's post-conviction/appellate counsel Dennis Schertz filed a no-merit report arguing that, Mr. Carter might claim that the court erroneously exercised its discretion in its denial of his post-conviction motion for a mistrial because of the deputy answering the jury's question regarding the need for a unanimous verdict. A defendant has a constitutional right to be present with counsel when the jury is being instructed. State v. Burton, 112 Wis.2d 560, 570, 334 N.W.2d 263 (1983). Communicating with the jury outside a defendants presence, however, is subject to

harmless error analysis. Id, at 568. A defendant is not entitled to a new trial where the error complained of is harmless beyond a reasonable doubt. Id, at 570 (citing Chapman v. California, 386 U.S. 18, 24(1967)).

The deputy's response to the jury's question was harmless beyond a reasonable doubt because there is no reason to believe that his answer contributed to the verdicts reached by the jury. As the court observed, the deputy's answer was the same answer that it would have given (after consulting with counsel, as it was the same as the jury instruction that had been provided to the jury. There would thus be no merit to a motion for a new trial based upon a claim that the court erroneously exercised its discretion in denying this final post-verdict motion." See, (Ex.H :38-39).

On appeal, the Wisconsin Court of Appeals for District One acknowledged that appellate counsel "filed a lengthy no-merit report that summarized the testimony presented and the myriad motions and issues the trial court decided, including…(9) denial of Carter's motion for a mistrial based on the fact that a bailiff answered the jury's question concerning the need for a unanimous verdict,"(Ex.A:3-4), but then proceeded to conclude in a footnote that, "[it] would not attempt to address every issue that arose in this case. [*Ex parte* issue]…As noted, we agree with counsel's analysis and conclusion that none of the issue identified presents an issue of arguable merit."(Ex.A:4)

Upon the court of appeals conclusion that their independent review of the record reveals no other potential issues of arguable merit, thereby relieving Dennis Schertz of further representation of Carter on appeal, Carter filed a petition for review with the Wisconsin Supreme Court. See, (Ex.M:).

In that petition Carter argued, " [he] was denied his Sixth Amendment right to counsel and the right to be present when the bailiff had *ex parte* communications which prejudicially affected his right to a fair trial." See, (Ex.M: 18-20).

The Wisconsin Supreme Court denied review on May 5, 2016. See, (Ex.N:).

**GROUNDS FOR RELIEF** - *continued*

_____

_____

_____

If you did not exhaust your state remedies on Ground Two, explain why.

_____

_____

_____

Ground Three_____

_____

_____

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you did not exhaust your state remedies on Ground Three, explain why.

_____

_____

**GROUNDS FOR RELIEF** - *continued*

Ground Four_____

_____

_____

Supporting **FACTS** *(Briefly summarize the facts without citing cases or law.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

If you did not exhaust your state remedies on Ground Four, explain why.

_____

_____

_____

## V. PRIOR FEDERAL CHALLENGES

A  Have you previously filed any type of petition, application, or motion **in a federal court** regarding the state conviction that you are challenging in this petition?

☐ Yes        ☒ No

If yes, attach the decision(s) that resolved your prior federal court challenge and answer the following questions.

1. Name of court _____

**PRIOR FEDERAL CHALLENGES** - *continued*

2.  Docket or case number _____

3.  Date of filing _____

4.  Type of petition, application, or motion filed _____

5.  Grounds raised _____

    _____

    _____

    _____

    _____

    _____

6.  Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes      ☐ No

7.  Result _____

8   Date _____

9.  Did you appeal the action taken on your first federal petition, application, or motion to a federal court of appeals?

    ☐ Yes      ☐ No

    If yes, attach the decision(s) that resolved your appeal and answer the following questions:

    a   Name of court _____

    b.  Docket or case number _____

    c.  Date of filing _____

    d.  Type of petition, application, or motion filed _____

    e.  Grounds raised _____

    _____

    _____

    _____

**PRIOR FEDERAL CHALLENGES** - *continued*

    f.  Result _____

    g.  Date _____

B.  Did you file a petition for certiorari in the United States Supreme Court?

    ☐ Yes        ☐ No

    If yes, attach the decision(s) that resolved your petition for certiorari and answer the following questions:

    1.  Date of filing petition for certiorari _____

    2.  Grounds raised _____

        _____

        _____

        _____

    3.  Result _____

    4.  Date _____

## VI.  REPRESENTATION

A  Give the name and address of each attorney who represented you in the following:

    1.  At preliminary hearing __Julius Andriusis_____

        _____985 W. Oklahoma Ave._____Milwaukee, Wis. 53215_____

    2.  At arraignment and plea hearing __Julius Andriusis_____

        _____985 W. Oklahoma Ave._____Milwaukee, Wis. 53215_____

    3.  At trial ____Julius Andriusis_____

        _____985 W. Oklahoma Ave._____Milwaukee, Wis. 53215_____

    4.  At sentencing ____Julius Andriusis_____

        _____985 W. Oklahoma Ave._____Milwaukee, Wis. 53215_____

    5.  On direct appeal ____Dennis Schertz_____

        _____P. o. Box 133___Hudson, Wis. 54016_____

**REPRESENTATION** - *continued*

6. In any state post-conviction proceeding _____ n/a _____

_____

7. On appeal from any ruling against you in a state post-conviction proceeding ____ n/a ____

_____

_____

## VII. REQUEST FOR RELIEF

State exactly what you want the court to do for you.

_____ Carter moves this Eastern District Court of Wisconsin

___ to reinstate his first appeal as of right._____

_____

_____

_____

## VIII. DECLARATION UNDER PENALTY OF PERJURY

I, the undersigned, hereby declare under penalty of perjury that the foregoing information is true and correct.

Signed this ___ 27 ___ day of ___ October _____, 20 17 .

___ Leon Carter _____
Signature of Petitioner

_____
(Signature of lawyer, if any)

If you are signing the petition and are not the petitioner, state your relationship to the petitioner and explain why the petitioner is not signing this petition.

_____

_____

_____

IX. **CERTIFICATE OF INMATE MAILING** - *Optional*

If you deposit your petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in your prison/institutional/jail mailing system and attach first-class postage pre-paid, and complete and sign this statement, you will establish the filing date as the date of deposit in that mailing system.

I, the undersigned, hereby declare under penalty of perjury that I placed this petition for a writ of habeas

corpus under 28 U.S.C. § 2254 in the prison/institutional/jail mailing system with prepaid, first-class

postage on _____.
*(month, day, year)*

Signed this _____27th_____ day of _____October_____, 20_17_ .

_____Leon Carter_____
Signature of Petitioner

# INDEX OF APPENDIX

Description of Documents                                                          Page(s)

Wisconsin court of appeals decision and order. Nov 5, 2015……………………….....A.1-A.8

Wisconsin court of appeals decision and order. July 13, 2015……………………………...J.1-J.3

Wisconsin Supreme Court Petition for review.
Decision and Order. May 5, 2016…..…………………………………………………………..Ex: N


United States Supreme Court Petition for a Writ of Certiorari.
Decision and Order. Nov 28, 2016 ……………………………………………………………..Ex: O