LEON CARTER,

        Plaintiff,

   v.                                    Case No. 17-cv-1497-pp

LIZZIE TEGELS,[1]

        Defendant.

---

**ORDER DISMISSING *HABEAS* PETITION (DKT. NO. 1), DISMISSING CASE AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

---

On October 30, 2017, the petitioner, who is incarcerated at Jackson Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2013 conviction in Milwaukee County Circuit Court on four counts of second-degree sexual assault, one count of kidnapping and one count of strangulation and suffocation. Dkt. No. 1; see also State v. Carter, Milwaukee County Case No. 11CF003689 (available at https://wcca.wicourts.gov).

On March 25, 2019, the court adopted Magistrate Judge William Duffin's report and recommendation and denied the respondent's motion to dismiss the petition. Dkt. No. 22. The petitioner filed a brief in support of the petition on

---

[1] Under Rule 2 of the Rules Governing Habeas Cases, "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." The petitioner is incarcerated at Jackson Correctional Institution; this order reflects Warden Lizzie Tegels as the respondent.

August 30, 2019. Dkt. No. 29. About five weeks later, the respondent filed an opposition brief. Dkt. No. 30. On December 13, 2019, the petitioner filed a reply. Dkt. No. 33.

The court will deny the petition and dismiss the case.

## I.   Background

### A.   State Case

#### 1.   *Pre-trial Proceedings*

An amended criminal complaint charged the petitioner with six felonies, ranging from second-degree sexual assault to kidnapping and strangulation. Dkt. No. 24-6 at 2. The charges involved the same victim—a woman referred to as Smith (a pseudonym)—with whom the petitioner had had a relationship for over ten years. Id. The complaint accused the petitioner of severe physical, sexual and psychological abuse, suggesting he treated Smith as 'property.'" Id. The petitioner previously had pled guilty to battering and intimidating Smith in 2002 and 2004. Id.

At a pre-trial motion hearing on March 9, 2012, the petitioner stated that he was prepared to argue a Shiffra[2] motion that he previously had filed with the court. Dkt. No. 24-2 at 5.[3] He also discussed a discovery motion in which he sought police reports to prove that the alleged victim had made prior false

---

[2] State v. Shiffra, 175 Wis. 2d 600 (1993), "a case where the Wisconsin Court of Appeals . . . establish[ed] procedures for an *in camera* review of a complainant's confidential records." Rizzo v. Smith, 528 F.3d 501, 506 (7th Cir. 2008).

[3] This portion of the procedural history is adapted from the first no-merit report filed by the petitioner's appellate counsel, Attorney Dennis Schertz.

2

accusations against a police officer. Id. The State opposed the Shiffra motion.
Id.

During a July 20, 2012 pretrial motion hearing, the prosecutor asked whether the petitioner "would be renewing [his] Shiffra motion, which, [the prosecutor] stated, the court had previously denied." Id. at 6. Regarding the petitioner's subpoena for police records, the court questioned the relevance of the alleged events from 2003 to the alleged events "in the present case in 2010." Id. at 6. The petitioner responded that the records would show Smith's prior false allegations of sexual assault, and "might also contain information relating to the victim's mental health . . . which was the subject of [his] Shiffra motion." Id. When asked "why his request was not just a 'fishing expedition,'" defense counsel cited his client's affidavits and the attachments to it. Id. at 7. The court adjourned the trial date. Id.

At another hearing on August 6, 2012, the court "expressed its continuing concern that the subpoena was just a fishing expedition, but [] stated that it would review the documents *in camera* . . . at the next court appearance." Id. "At that next hearing on September 17, 2012," the court "noted some additional issues relating to the defense's Shiffra motion." Id. at 8-9.

At a motion hearing on November 8, 2012, the court again discussed the petitioner's request for Ms. Smith's mental health records, reiterating that it alleged "issues that Ms. [Smith] may have had in 2003 or 2002." Dkt. No. 24-11 at 17. The court denied the petitioner's motion to reconsider the ruling on

3

the petitioner's <u>Shiffra</u> motion, stating that it had "made [its] ruling" and "[would not be] redoing that." <u>Id.</u> Again, the court questioned the relevance of Ms. Smith's alleged mental health issues from seven or eight years prior to incidents that had occurred in 2010. <u>Id.</u> After the petitioner's trial counsel, Julius Andriusis, stated that he "[didn't] know if [Ms. Smith's] condition worsened up or bettered up or what happened with her since that time," <u>id.</u>, the court continued:

> THE COURT: But as I recall, when I dealt with the <u>Shiffra</u> motion, there was really no basis. It was in my view a fishing expedition based on nothing other than some bald—bold assertions from your client. There was no—it didn't meet the legal criteria of <u>Shiffra</u>. I am not revisiting that issue, so let's deal with these 2000 and 2003 claims. The issue is remoteness in time. In 2002 I wasn't even a judge. Now I've been a judge for 9 years. That's a long time frame. Seven or eight years is a very long time frame. Having a mental health issue in 2003 does not . . . necessarily mean[] that you are faking something or lying . . . about allegations 8 years later.

> ATTORNEY ANDRIUSIS: Well, as I can say, maybe it's a fishing expedition as this Court called my original motion that I filed, but these reports I guess support my fishing expedition and it was one police report attached that were—

> THE COURT: Well, actually, no, they don't, counsel. That's my point. Because someone had an issue in 2002 does not mean they are having the same issue in 2010. Some mental health issues. . . [are] . . . situational. That doesn't mean the same thing is occurring 8 years later.

<u>Id.</u> at 18-19. The prosecutor reasoned that under <u>Shiffra</u>, the petitioner's motion did not cite sufficiently "specific information that would lead the [c]ourt to believe that there are some mental health records . . . that contain information that would likely be material to [the petitioner's] defense." <u>Id.</u> at 19.

The court continued:

4

THE COURT: . . . Beyond everything I've already said, there has to be specificity . . . If someone is being treated for depression and they are taking Prozac, . . . that in most cases has nothing to do with anything because it doesn't affect that person's ability to relay events to the police, it doesn't appreciate or affect that person's ability to . . . understand reality, to function day to day, to work, to have a job, to give a police officer a police report. If you had evidence of someone having . . . a psychotic disorder or being detached from reality or hearing voices, that might be a different situation. Here if there's anything, it's mild assertions and limited indications of mental health issues 7 or 8 years before the alleged multiple offenses by [the petitioner].

Id. at 19-20. The court concluded:

[A]t this point I'm not allowing anything to be discussed about Ms. [Smith] and her situation with the police officer in 2002 or 2003. It's remote in time. It's likely not to add anything to this trial. If there's a discussion during the case, during the victim or alleged victim's testimony of mental health issues if she's on her medication in 2010 when these crimes allegedly occurred, it might come out.

Id. at 21. The court clarified that its ruling was "not a blanket bar," and that if it became relevant, "there may be some discussion at the trial of the victim or alleged victim's mental health issues." Id. at 21-22. It reiterated, however, that whether "8 years prior to this incident, Ms. [Smith] was being treated for depression and sleep problems" was "not relevant to what she was doing in 2010 and whether or not [the petitioner] committed multiple felonies against her." Id. at 22.

On December 11, 2012—a week before the petitioner's trial—the circuit court held a final pretrial conference. Dkt. No. 24-12. The State informed the court that it was ready for trial after its investigator made travel arrangements in order to comport with the petitioner's speedy trial demand. Id. at 2-4. The court then turned to the petitioner, who stated that while he "wish[ed] to be

5

ready to proceed," he was concerned about whether certain witnesses would appear. Id. at 4. The court advised the petitioner that because of his speedy trial demands and because "[t]he State just went through extraordinary steps," the case was going to trial next week. Id. After the petitioner repeated his concern about witnesses, the court stated that it would not adjourn the trial, stressing again the petitioner's speedy trial demands, the age of the case and the interest of fairness. Id. at 5. Attorney Andriusis then asked the court to make a record:

> ATTORNEY ANDRIUSIS: . . . just a few more things I would like to place on the record. I met with client yesterday, we discussed the case . . . I would like to make record of the case, Judge. So client expressed some dissatisfaction with me, maybe I have to let you go. So this was read to me and—
>
> THE COURT: We can address that right now. Your client doesn't make that call, I do. You are not being released from your duties in this case. This case is a year and a half old, you're the second attorney on this case, it is proceeding to trial on Monday.

Id. at 4-6.

### 2. *Trial in Milwaukee County Circuit Court*

The petitioner's theory of defense was that he did not hold Smith against her will and that she was lying. Dkt. No. 24-6 at 2. To support that defense, the petitioner unsuccessfully attempted to introduce Smith's "past mental health treatment and a prior allegation against a police detective that resulted in an internal affairs report." Id. The jury found the petitioner guilty on all counts, and the court sentenced him to a total of sixty-three years of initial confinement and twenty-three years of extended supervision, including: four consecutive terms of fifteen years of initial confinement and five years of

6

extended supervision; one consecutive term of three years of initial confinement and three years of extended supervision; and one concurrent term of fifteen years of initial confinement and five years of extended supervision. Id. at 3.

After the court addressed the post-verdict motions, dkt. no. 24-21 at 86-87, it made a record of an exchange between the jury and a courtroom deputy:

> THE COURT: I do also want to note for the record that we did receive the following handwritten question over the lunch hour. It says: What happens if we do not unanimously agree on one of the six counts, and it is signed by the foreperson. I think Deputy Terrell responded in my absence that you need to just work and reach unanimous verdict, is that correct, Deputy?
>
> COURT OFFICER: It was actually me, Deputy Kashishias.
>
> THE COURT: I would note that's not my standard practice. I would not have responded to this without assembling you. The reality is we probably all would have come up with saying the same thing and in fact that's the jury instruction, but I did want to put that on the record. I don't think that it changes the integrity of the verdicts that were received.

Id. at 87-88. The petitioner moved for a mistrial, arguing that Deputy Kashishias's response to the jury's question interfered with the jury's deliberations. Id. at 88. The court denied the motion, reasoning that because (1) the language of the jury instructions stated that "the jury has to reach together to reach unanimous verdict," and (2) the court and the parties likely would have provided the same response, Deputy Kashishias's communication with the jury did not prejudice the petitioner. Id. at 87-89.

3. *Attorney Schertz's First No-Merit Report (Dkt. No. 24-2)*

The petitioner filed a notice of appeal on June 25, 2014. See Carter, Case No. 11CF003689 (available at https://wcca.wicourts.gov). In October 2014, Attorney Schertz filed a no-merit report finding no appealable issues. Dkt. No. 24-2 at 3, 43. Attorney Schertz's report considered whether the petitioner's sentence was excessive, id. at 35, "whether [the petitioner] received a fair trial at which there was sufficient evidence for a finding of guilt," id. at 36, and whether the petitioner received the effective assistance of counsel, id. at 43.

Attorney Schertz found "nothing in the record to support a claim that the court's sentence was excessive under the circumstances." Id. at 36. He reasoned that "[the petitioner] [could not] show an unreasonable or unjustifiable basis for the sentence he received," id. at 35, "[t]he court stated the factors upon which it relied in passing sentence," id. at 36, "[t]here [was] no indication that it gave too much weight to any one factor," id. at 36, "[t]here [was] no evidence that the court relied on irrelevant or immaterial factors," id. at 36, and "the court was well within the possible sentence allowed by law," id. at 36.

Attorney Schertz concluded that the petitioner "received a fair trial at which there was sufficient evidence for a finding of guilt," reasoning that (1) "there was more than sufficient evidence for the jury to have reached the verdicts it did," id. at 36; (2) the court properly granted the State's other acts motion, id. at 37; (3) the court properly denied the petitioner's Shiffra motion, id.; (4) the court properly found that the petitioner's speedy trial waiver was

8

freely, voluntarily and intelligently given, id.; (5) the court properly denied the petitioner's request "to introduce evidence of a prior domestic violence case involving the victim," id. at 38; (6) the court properly denied the petitioner's request to introduce evidence of what he "claimed was a prior false allegation of sexual assault by the victim against a police officer," id. at 38; (7) the court properly denied the petitioner's requests for his attorney to withdraw the week the trial was supposed to begin, id. at 38-39; (8) the court properly excused a tardy juror on the fourth day of trial, id. at 39; (9) the court properly denied a hypothetical mistrial motion based on a Department of Corrections agent's testimony in which the agent erroneously referred to the petitioner as a sex offender, id. at 39-40; (10) the court properly denied the petitioner's request to elicit testimony regarding "the victim's reputation for untruthfulness," id. at 40; (11) Attorney Andriusis's performance did not violate the petitioner's right to a fair trial, id. at 40-41; (12) the court properly instructed the jury on other acts evidence, id. at 41; (13) the court correctly denied a motion for a mistrial alleging that the court showed "excessive compassion for the alleged victim," id. at 41; (14) the court correctly denied the petitioner's post-verdict motions, id. at 41-42; (15) the court properly excused a "juror with a doctor's appointment as the last alternate," id. at 42; (16) the court properly denied the petitioner's motion for a new trial based on Deputy Kashishias's communication with the jury, id. at 42-43; and (17) the petitioner did not receive ineffective assistance of counsel, id. at 43.

In December 2014, the petitioner filed a response to Attorney Schertz's no-merit report. Dkt. No. 24-5. The petitioner argued that the no-merit report violated "Wis. Stat. Rule 809.32" and the United States Supreme Court's decision in McCoy v. Court of Appeals of Wis. because Attorney Schertz relied on "unexplained assumptions and [conclusory] allegations" to explain why he found the various issues meritless. Id. at 2 (citing McCoy, 486 U.S. 429, 440, 442-44 (1988)). The petitioner asserted that "it [did] not appear that Attorney [] Schertz resolved all doubts and ambiguous legal questions" in the petitioner's favor. Id.

### 4. *Supplemental No-Merit Report (Dkt. No. 24-4)*

On July 13, 2015, after it "independently reviewed the record, the no-merit report, and [the petitioner's] response as mandated by Anders [v. California, 386 U.S. 738 (1967)]," the Wisconsin Court of Appeals ordered Attorney Schertz to file a supplemental no-merit report. Dkt. No. 24-3 at 1-2. The court ordered further analysis of the other acts issue, directing Attorney Schertz "to cite 'the principle cases and statutes and the facts in the record that support the conclusion that the [issue] is meritless.'" Id. at 2 (quoting McCoy, 486 U.S. at 440). The court asked Attorney Schertz to "specifically address, with references to the record and authority:" (1) what other acts the trial court found admissible at trial; (2) whether the circuit court's lack of an on-the-record analysis of prejudice raised an "issue of arguable merit;" (3) whether the admission of the other acts evidence unduly prejudiced the petitioner; (4) whether all of the other acts introduced at the trial were

10

encompassed by the circuit court's other acts ruling; and (5) "whether trial counsel provided ineffective assistance by not objecting to the admission of certain other acts evidence during trial." Id. at 2.

The court also ordered Attorney Schertz to conduct additional analysis of the Department of Corrections agent's testimony. Id. "In addition to citing applicable case law and facts in the record," the court directed Attorney Schertz "to specifically address: (1) whether there would be potential merit to assert that trial counsel provided ineffective assistance by not objecting sooner and/or moving for a mistrial; and (2) whether there would be any arguable merit to challenge the trial court's analysis that it would not have granted a mistrial even if [the petitioner] had formally moved for it." Id. at 2-3.

Two and a half months later, Attorney Schertz filed his supplemental no-merit report. Dkt. No. 24-4. Focusing on the Wisconsin Supreme Court's 1998 decision in State v. Sullivan, 216 Wis. 2d 768, 772-73 (Wis. 1998),[4] Attorney Schertz discussed case law governing the admissibility of other acts evidence in Wisconsin. Id. at 2-10 (citing Sullivan, 216 Wis. at 772-73; State v. Kaster, 148 Wis. 2d 789, 797 (Wis. Ct. App. 1989); State v. Hunt, 263 Wis. 2d 1 (2003); State v. Bettinger, 100 Wis. 2d 691, 697 (1981); State v. Clemons, 164 Wis. 2d 506, 514-16 (Wis. Ct. App. 1991); Holmes v. State, 76 Wis. 2d 259, 273 (1977);

---

[4] A Wisconsin trial court considering an "other acts" motion applies a three-part analysis: "first, whether the proposed evidence falls within one of the exceptions of Wis. Stat. § 904.02(2); second, whether the evidence is relevant; and third, whether the probative value of the proffered evidence is substantially outweighed by the danger of unfair prejudice to the defendant." Dkt. No. 24-4 at 2-3 (citing Sullivan, 216 Wis. 2d at 772-73).

Bailey v. State, 65 Wis. 2d 331, 347 (Wis. 1974); State v. Jensen, 331 Wis. 2d 440, 480 (Wis. Ct. App. 2011); State v. Jones, 151 Wis. 2d 488, 493 (Wis. Ct. App. 1989); State v. Davidson, 236 Wis. 2d 537, 575 (Wis. 2000)).

Attorney Schertz concluded that (1) a claim for a new trial based on the circuit court's decision to grant the other acts motion would have been meritless, id. at 5-6; (2) the trial court's other acts ruling "[i]n theory . . . included everything referenced in those [seventy-three] pages of exhibits attached to the State's motion," id. at 6; (3) the trial court did not unfairly prejudice the petitioner by failing conduct an on-the-record Sullivan analysis, id. at 6-7; (4) the trial court did not unduly prejudice the petitioner when it admitted the other acts evidence, id. at 7-8; (5) the court did not unfairly prejudice the petitioner by admitting other acts evidence not covered by the court's other acts ruling, id. at 8-10; (6) trial counsel was not ineffective for failing to object to the complaining witness's testimony, id. at 10; (7) "the only potential ground for a new trial motion based upon the DOC agent's unexpected (and unprompted) testimony would be a claim that defense counsel was ineffective for either not moving for a mistrial following this testimony," or for not accepting the court's offer for a curative instruction, id. at 12; and (8) a claim that defense counsel was ineffective either for failing to move for a mistrial based upon the Department of Corrections agent's testimony, or for failing to accept the court's offer for a curative instruction, would be meritless because the agent's answers to the prosecutor's questions following the sidebar

12

made it clear that the petitioner was not being supervised as a sex offender, id. at 13.

####### 5.     *Wisconsin Court of Appeals Decision (Dkt. No. 24-6)*

The Wisconsin Court of Appeals summarily affirmed the petitioner's conviction on November 5, 2015. Dkt. No. 24-6 at 2. Noting its independent review of the trial record, the no-merit and supplemental no-merit reports, and the petitioner's response "as mandated by Anders," the court found "no issue of arguable merit that could be pursued on appeal." Id. at 1-2 (citing Anders, 386 U.S. 738). The court explained that while it agreed with Attorney Schertz's "description and analysis, [it would] briefly discuss several of the identified issues." Id. The court referenced a footnote, which explained:

> This court will not attempt to address every issue that arose in this case. The thirty-nine page no-merit report and the twelve-page supplemental report provide an exhaustive summary of the numerous motions and rulings that occurred before and during trial. As noted, we agree with counsel's analysis and conclusion that none of the issues identified presents an issue of arguable merit.

Id. The court reviewed the trial court's decision to admit the State's other acts evidence, the trial court's decision not to declare a mistrial after a Department of Corrections agent referred to the petitioner as a sex offender, the performance of the petitioner's trial counsel and the alleged excessiveness of the sentence. Id. at 5-7. On each issue, the court agreed with Attorney Schertz and found no arguable merit to pursue an appeal or motion. See id. at 5, 6, 7-8.

Regarding the State's other acts motion, the Court of Appeals found that the trial court "engaged in the requisite analysis under [Sullivan]," and that

13

"[a]lthough the trial court did not explicitly discuss whether the probative value of the proffered evidence outweighed the risk of unfair prejudice, an appellate court 'independently review[s] the evidence to determine if it supports the trial court's decision to admit the other crimes evidence.'" Id. at 5 (citing Sullivan, 216 Wis. 2d at 772-73; State v. Shillcutt, 116 Wis. 2d 227, 236 (Wis. Ct. App. 1983)). The Court of Appeals concluded that after reviewing the record, there was "no arguable merit to assert that the trial court's decision was unsupported by the record." Id. It found that "the trial court . . . explicitly addressed all three prongs of the Sullivan test, and [] gave the appropriate cautionary instructions." Id.

The court next considered the testimony of the Department of Corrections agent:

> On direct examination, as the agent was explaining that [the petitioner] was on her caseload and that she is a sex offender specialist, the agent added that [the petitioner] "has a prior sexual assault, but he was actually on [supervision] for two counts of battery." Later, the agent referred to [the petitioner] and the other men she supervised as "sex offenders." Trial counsel sought a sidebar conference, after which the State clarified with the witness that the Department may put people under sex offender supervision "even if they were not in that instance convicted of a sex offense." The State further clarified that [the petitioner] was on supervision for batteries. Later, outside the jury's presence, trial counsel told the trial court that he thought the State had "cleaned up" the problem and that there was no need for a mistrial. The trial court recognized that trial counsel was not seeking a mistrial, but it nonetheless considered whether one should be granted and concluded that a mistrial was not warranted because the jury had already heard "a lot of evidence of sexual assault by [the petitioner] against [Smith], some charged and some as prior bad acts" and it was unlikely that the reference to sex offender supervision "would rise to the level of any kind of prejudice that would warrant a mistrial." Before the case was submitted to the jury, trial counsel told the trial court that he did not want to have a curative instruction.

14

Id. at 5-6. The court agreed with Attorney Schertz that "a motion or appeal based on the witness's statements, the trial court's handling of the issue, or trial counsel's decision not to seek a curative instruction concerning this issue" would have been meritless. Id. at 6.

As to trial counsel's performance, the Court of Appeals agreed with Attorney Schertz, finding nothing "that would rise to the level of ineffective assistance." Id. "Finally, [the court] turn[ed] to sentencing," and concluded that "there would be no arguable basis to assert that the trial court erroneously exercised its sentencing discretion, or that the sentences were excessive." Id. at 6-7 (citing State v. Gallion, 270 Wis. 2d 535, 549 (Wis. 2004); Ocanas v. State, 70 Wis. 2d 179, 185 (Wis. 1975)). "[T]he trial court," according to the Court of Appeals, "applied the standard sentencing factors and explained their application in accordance with the framework set forth in *Gallion* and its progeny." Id. at 7. It noted that the trial court "discussed the severity of the abuse Smith suffered," "discussed [the petitioner's] criminal history" and "concluded that in order to prevent [the petitioner][5] from victimizing Smith or others again, it needed to impose a sentence that would 'not allow [the petitioner] to see the light outside of a prison.'" Id. "[The court's] review of the sentencing transcript [led] it to conclude that there would be no merit to challenging the trial court's compliance with *Gallion*." Id.

_____

[5] The Court of Appeals' decision actually names 'Smith,' not the petitioner. This court understands that to be an error, and that the court intended to refer to the petitioner.

The court similarly found that "there would be no merit to assert that the sentence was excessive" under Ocanas. Id. It reasoned that "[w]hile the sixty-three-year term of initial confinement is significant and is, in all likelihood, a life sentence, . . . [the petitioner] was convicted of six serious felonies" and "was facing over two hundred years of imprisonment." Id. at 7-8. The court found the sentence imposed "well within the maximum sentence and [] discern[ed] no erroneous exercise of discretion." Id. at 8 (citing State v. Scaccio, 240 Wis. 2d 95, 108 (Wis. Ct. App. 2000)).

6.    *Petition for Review in the Wisconsin Supreme Court*

The petitioner filed a petition for review in the Wisconsin Supreme Court on December 7, 2015. Dkt. No. 24-7; see also Carter, Case No. 14AP001459 (available at https://wscca.wicourts.gov). He argued that the Court of Appeals had violated his right to a meaningful appeal and his right to the effective assistance of appellate counsel when it accepted Attorney Schertz's no-merit report. Id. at 5.

The petitioner alleged that (1) the trial court had violated his due process rights when it denied his Shiffra motion; (2) the trial court had violated his right to present a defense when it denied his request to introduce evidence to impeach a witness; (3) the trial court had "violated [his] Sixth Amendment right to effective assistance of counsel when it failed to inquire into . . . [his] implicit request for new trial counsel;" (4) "[he] was denied his Sixth Amendment right to counsel and the right to be present when the bailiff had ex parte communications which prejudicially affected his right to a fair trial;" (5) the

16

trial court violated his right to present a defense when it denied a motion to introduce "false allegations of sexual contact;" (6) "trial counsel provided ineffective assistance of counsel;" and (7) the Court of Appeals erred when it determined that the trial court correctly had admitted other acts evidence. Id. at 5-6.

On May 5, 2016, the Wisconsin Supreme Court denied review. Dkt. No. 24-9.

B.    Federal *Habeas* Petition (Dkt. No. 1)

The petitioner filed his federal *habeas* petition on October 30, 2017, arguing that the Wisconsin Court of Appeals had violated his Sixth Amendment right to effective assistance of appellate counsel and his Fourteenth Amendment right to a meaningful appeal when it accepted Attorney Schertz's no-merit report. Dkt. No. 1 at 1, 6. On November 17, 2017, Magistrate Judge William Duffin screened the petition under Rule 4 of the Rules Governing Section 2254 Cases. Dkt. No. 9. Judge Duffin explained his understanding of the petitioner's claims:

> [The petitioner] alleges a violation of his sixth amendment right to effective assistance of counsel on his first appeal as of right and his fourteenth amendment right to a meaningful appeal when the Wisconsin Court of Appeals accepted an inadequate no merit report. [The petitioner's] claims were exhausted before the state court in Wis. Appeal No. 2014AP001459. The United States Supreme Court denied [the petitioner's] petition for a writ of certiorari on November 28, 2016. Therefore, the respondent shall answer the petition.

Id. at 2.

On January 4, 2018, the respondent filed a motion to dismiss the petition, dkt. no. 13, arguing that because the petitioner did not exhaust his

ineffective assistance claim, his petition was mixed, dkt. no. 14 at 1, 5. According to the respondent, Wisconsin law requires a defendant to raise an ineffective assistance of appellate counsel claim through a *habeas* petition in the Wisconsin Court of Appeals. Id. at 4 (citing State v. Knight, 168 Wis. 2d 509, 512-13 (Wis. 1992)). The respondent asserted that the petitioner had challenged his appellate attorney's performance through a *certiorari* petition to the Wisconsin Supreme Court rather through a *habeas* petition in the Wisconsin Court of Appeals. Id. at 5. Ultimately, the respondent said, the petitioner never fairly presented that claim to the Wisconsin courts. Id. (citing Knight, 168 Wis. 2d at 512-13).

The petitioner responded that his petition was not mixed; he contended that he fairly had presented his "claim that he was deprived of 'his sixth amendment right to the effective assistance of counsel on his first appeal as of right and his fourteenth amendment right to a meaningful appeal when the Wisconsin Court of Appeals accepted an inadequate no-merit report' to both the Wisconsin Court of Appeals . . . and the Wisconsin Supreme Court." Dkt. No. 15 at 4 (citation and emphasis omitted). He asserted that he had "provided the court of appeals with a 'fair opportunity' to address his challenge . . . to 'appellate counsel's [] no-merit report,'" and that he "then went on to exhaust his challenge first made in his response to appellate counsel's [] no-merit report/brief . . . to the Wisconsin Supreme Court." Id. at 5. The petitioner asserted that his petition had "alleged [no] independent claim of the ineffective assistance of appellate counsel," and that his petition for review in the

18

Wisconsin Supreme Court had challenged only "the Wisconsin Court of Appeals failure to properly follow the no-merit procedures required by *Anders v. California*, 386 U.S. 738 (1967), as codified in Wis. Stat. [§]809.32." Id. at 5-6. He stressed that "a claim alleging that [an appellate court's] failure to follow the no-merit procedures required by *Anders . . .* [and] Wis. Stat. [§]809.32 deprived a petitioner's right to the effective assistance of appellate counsel is legally distinct from an independent claim alleging the ineffective assistance of appellate counsel under a *Strickland* analysis." Id.

In reply, the respondent noted that the petitioner "improperly combines his claims in an attempt at skirting his exhaustion defect." Dkt. No. 17 at 1. "Although he attempts to recharacterize it in his response," the respondent argued, "[the petitioner's] primary basis for habeas relief is an unexhausted Sixth Amendment ineffective assistance claim." Id. at 2. "[T]he essence of [the petitioner's] federal habeas claim," the respondent concluded, "is the constitutionally inadequate analysis performed by his appellate counsel," "[a]nd that claim was never presented to the Wisconsin Court of Appeals as a constitutional claim." Id. at 3.

On June 11, 2018, this court referred the case to Judge Duffin for a report and recommendation. Dkt. No. 18. Judge Duffin clarified that when he initially had screened the petition, he had understood it as alleging both a denial of the petitioner's Fourteenth Amendment right to a meaningful appeal, and a denial of his Sixth Amendment right to the effective assistance of counsel. Dkt. No. 19 at 3. Judge Duffin concluded that the petitioner had not

19

exhausted his ineffective assistance of counsel claim because he never had presented it to the Wisconsin Court of Appeals. Id. at 3. Judge Duffin concluded that the petitioner had argued only that his appellate counsel's no-merit brief did not meet the requirements of Wis. Stat. §809.32. Id. at 3-5. Judge Duffin recommended that this court grant the motion to dismiss unless the petitioner moved to withdraw his ineffective assistance claim or asked the court to stay the federal *habeas* proceedings and hold his petition in abeyance while he returned to the Wisconsin Court of Appeals to properly exhaust the ineffective assistance claim. Id. at 7. In January of 2019, the petitioner filed a motion to withdraw his ineffective assistance of appellate counsel claim. Dkt. No. 21.

Noting that neither party had objected to Judge Duffin's report and recommendation, this court reviewed it for clear error, found none and adopted the report and recommendation on March 25, 2019. Dkt. No. 22 at 6. The court agreed that the petition asserted separate claims under the Fourteenth and Sixth Amendments, that the petitioner never had exhausted the Sixth Amendment claim and that this had resulted in a mixed petition. Id. at 6-7. The court also agreed with Judge Duffin's recommendation that the court give the petitioner the option to either dismiss the unexhausted claim or to ask the court to stay the case so that he could return to state court to exhaust the unexhausted claim. Id. at 7. The court allowed the petitioner to withdraw his unexhausted claim and denied the motion to dismiss. Id. The court ordered the petitioner, however, to "confine his future arguments to the question of

whether the state court denied him his Fourteenth Amendment right to a meaningful appeal by accepting and adopting the no-merit brief." Id.

About two months later, the respondent answered the petition under Rule 5 of the Rules Governing Section 2254 Cases; the respondent asserted "that the [Wisconsin Court of Appeals] did not deny [the petitioner] his Fourteenth Amendment right to a meaningful appeal by accepting and adopting the no-merit brief" and that "any constitutional violation was harmless error." Dkt. No. 24 at 3-4.

C. Petitioner's Brief in Support (Dkt. No. 29)

In his brief in support of the petition, the petitioner asserts that the Wisconsin Court of Appeals violated Anders, 386 U.S. 738—and his Fourteenth Amendment right to a meaningful appeal—when it agreed with the conclusions in Attorney Schertz's no-merit reports that (1) there was no merit to a claim based on Deputy Kashishias's response to the jury's question, (2) there was no merit to a claim based on the trial court's denial of the petitioner's Shiffra motion and (3) the trial court was within its discretion in denying the petitioner's request for the withdrawal of his attorney. Dkt. No. 29 at 8, 16, 24. The petitioner contends that each of these issues had arguable merit. Id. at 9, 16, 26. He alleges that the Wisconsin Court of Appeals unreasonably applied Anders when it stated in a footnote that it "[would] not attempt to address every issue in the case;" he reasons that when it "simply agree[d] with counsel's analysis and conclusion," the Wisconsin Court of Appeals failed to "conduct a 'full examination of all the proceedings to decide whether the case [was] wholly

21

frivolous.'" Id. at 9 (citing Anders, 386 U.S. at 744-45). He asserts that under Anders, the Wisconsin Court of Appeals "had an obligation to afford [the petitioner] the assistance of counsel" to argue each of his claims. Id. at 16 (citing Anders, 386 U.S. at 744); see also id. at 26, 33.

The petitioner argues that the Milwaukee County Circuit Court erred throughout his trial. He maintains that the court (1) violated Rushen v. Spain, 464 U.S. 114 (1983) when it failed to conduct a hearing to determine whether Deputy Kashishias's communication with the jury was harmless, id. at 11; (2) violated Remmer v. United States, 347 U.S. 227 (1954) when it failed to find that communication presumptively prejudicial, id. at 11; (3) violated Owens v. Duckworth, 727 F.2d 643 (7th Cir. 1984) when it declined to place the burden on the government to establish that contact between Deputy Kashishias and the jury was harmless, id. at 11-12; (4) violated Wisconsin law by failing to find Deputy Kashishias's communication with the jury to be prejudicial as a matter of law, id. at 13-14 (citing State v. Gibas, 199 Wis. 2d 525 (Wis. Ct. App. 1996)); (5) unreasonably applied Pennsylvania v. Ritchie, 480 U.S. 39 (1987) when it denied the petitioner's Shiffra motion and found that it had "no basis [and] . . . that it was a fishing expedition based upon non-specific, bald assertions by the defense," id. at 23-24; (6) violated his Sixth Amendment right to counsel of his own choice, id. at 31 (citing U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144-46 (2006)); (7) failed to explore whether there was a complete communicational breakdown between [the petitioner] and trial counsel," id. at 27-28 (citing State v. McDowell, 272 Wis. 2d 488 (Wis. 2004)); (8) failed to

22

"retrospective[ly] inquir[e]" into the petitioner's "implicit request for substitute counsel," id. at 31; (9) failed to develop a sufficient record as to why the petitioner fired his own attorney, id. at 29, 33 (citing State v. Lomax, 146 Wis. 2d 356 (Wis. 1988)); (10) unreasonably determined that the petitioner was "playing games" when he fired his attorney, id. at 29-30; and (11) "unreasonably determined that [the petitioner's] request for substitute counsel was merely a ploy for [the petitioner] to attempt to stall out the process of proceeding to trial." Id. at 30.

      D.     Respondent's Brief in Opposition (Dkt. No. 30)

Stressing that the petition "is limited to one claim—that the Wisconsin Court of Appeals' decision accepting the no-merit report violated his due process right to a meaningful appeal," the respondent argues that the court should deny relief because the Wisconsin Court of Appeals' decision was not contrary to federal law. Dkt. No. 30 at 8. According to the respondent, Anders creates no "independent constitutional command" and does not constitutionally prescribe a specific procedure for the Wisconsin Court of Appeals. Id. (citing Smith v. Robbins, 528 U.S. 259, 273 (2000)). The respondent argues that Anders pertains to an appellate attorney's conduct, not the conduct of the appellate court. Id. (citing Robbins, 528 U.S. at 273). In any event, the respondent says, "the Wisconsin Court of Appeals reviewed the entire record and submissions and independently concluded that [the petitioner] had no meritorious issues on which to base an appeal." Id. at 9.

23

The respondent asserts that the Wisconsin Court of Appeals did not unreasonably apply clearly established federal law when it adopted the no-merit report's conclusion that the petitioner's "jury tampering claim" would have been meritless. Id. at 9, 10. Beyond Anders, the respondent argues, "the only United States Supreme Court case law [the petitioner] cites in support of a mistrial is [Spain, 464 U.S. 114] and [Remmer, 347 U.S. 227]," and the respondent asserts that the Wisconsin Court of Appeals' decision violated neither case. Id. at 11. According to the respondent, Spain clarifies that (1) *ex parte* communications between a judge and a juror can be harmless, id.; (2) "the Constitution 'does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote,'" id. (citing Spain, 464 U.S. at 119); (3) "[w]hen an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties," id. (citing Spain, 464 U.S. at 119); and (4) "it is only where the court fails to disclose the contact that a post-trial hearing is used to determine prejudice," id. (citing Spain, 464 U.S. at 119). The respondent stresses that in the petitioner's case, "the trial judge told the parties about [Deputy Kashishias's] contact with the jury" and "explained that the contact was made harmless by the fact that [Deputy Kashishias] answered the juror's question just as the court would have." Id. at 12.

The respondent agrees that <u>Remmer</u> directs a presumption of prejudice on a finding of certain communications "with a juror during a trial about the matter pending before the jury." <u>Id.</u> (citing <u>Remmer</u>, 347 U.S. at 229). The respondent stresses, however, that the presumption "is overcome upon a showing that the juror contact was harmless." <u>Id.</u> (citing <u>Remmer</u>, 347 U.S. at 229). The respondent asserts that in the petitioner's case, the trial court "disclosed to both parties that [Deputy Kashishias] answered the jury's question," "explained that the deputy's answer was the same thing the court would have said, and found that the jury contact was harmless." <u>Id.</u> The respondent says that "under no-merit review," the Wisconsin Court of Appeals independently reviewed all potential issues and adopted the finding that the jury tampering claim was meritless. <u>Id.</u>

The respondent notes that although the Wisconsin Court of Appeals "did not expressly discuss" the <u>Shiffra</u> issue, it (1) "identified it as one of the numerous issues [the petitioner] raised," and (2) "reviewed the record and all submissions," including "[t]he no-merit report thoroughly discuss[ing] the issue," and (3) independently concluded that all of those issues were meritless. <u>Id.</u> at 14. The respondent argues that the Wisconsin Court of Appeals' decision did not violate <u>Ritchie</u>, contending that (1) rather than requiring the petitioner to make a particularized showing, the trial court reasonably rejected the petitioner's motion "because he did not make a plausible showing of how the records were both 'material and favorable to his defense,'" and (2) the Wisconsin Court of Appeals "did not expressly apply <u>Ritchie</u> because it agreed

with the no-merit report" that the issue was meritless. Id. at 15-16 (citing Moseley v. Kemper, 860 F.3d 1020, 1023-24).

Regarding the petitioner's claim "that the trial court violated his Sixth Amendment right to counsel of choice by not allowing him to fire his attorney a week before trial," the respondent argues that the petitioner "neglects to show how the state court's decision conflicts with federal law." Id. at 17. The respondent notes that "[n]either [the petitioner], nor his trial attorney, ever made a formal request for new trial counsel." Id. Asserting that "trial counsel never provided the court with a legitimate reason for withdrawal," the respondent concludes that "the trial court was well within its discretion to deny such a request." Id. The respondent says that the petitioner "was not constitutionally entitled to counsel of choice." Id. at 18 (citing United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006); United States v. Bender, 539 F.3d 449, 454-55 (7th Cir. 2008)). The respondent clarifies that "to the extent that [the petitioner] alleges that communication with his attorney broke down as a result of neglect or ineptitude by counsel, [the petitioner] would have had to present, support, and exhaust a claim of ineffective assistance of counsel." Id. (citing United States v. Wallace, 753 F.3d 671, 675 (7th Cir. 2014).

E.    Petitioner's Reply Brief (Dkt. No. 33)

The petitioner insists that Anders requires an appellate court to "fully examine all of the proceedings, to decide whether the case is wholly frivolous." Dkt. No. 33 at 2 (citing Anders, 386 U.S. at 744-45). Relying on Douglas v. People of State of Cal., 372 U.S. 353, 354 (1963), the petitioner asserts that his

26

appeal was merely "a meaningless ritual" and that the Wisconsin Court of Appeals denied his right to appellate counsel. Id. at 3-4. He states that

> [c]ontrary to the respondent's argument, [the petitioner] is not reframing the claim, he is alleging that the [Wisconsin Court of Appeals'] determination that his appeal is wholly frivolous is unreasonable under *Anders*, which violates his right to a meaningful appeal. That there exists arguable meritorious claims that [the petitioner] discusses to prove that the [Wisconsin Court of Appeals] violated *Anders* and in turn violated his fourteenth amendment right to a meaningful appeal shows [their] interrelatedness to each other, not a reframing.

Id. at 4. Finally, the petitioner asserts that the trial court violated his constitutional right to *substitute* his appointed counsel, not his right to counsel of choice. Id. at 11-15.

## II. Analysis

### A. Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.'"
Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "The 'unreasonable application' clause requires the state court decision to be *more* than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

B.      Analysis

Under the Sixth Amendment, a criminal defendant has a right to appellate counsel on direct appeal. Douglas, 372 U.S. at 357. On appeal, however, a criminal defendant no longer enjoys the presumption of innocence. McCoy, 486 U.S. at 436. "An indigent defendant's counsel on appeal 'cannot serve the client's interest without asserting specific grounds for reversal.'" Id. at 436. "For this reason, counsel is ethically prohibited from prosecuting a frivolous appeal." Id.

In Anders, the United States Supreme Court described an acceptable procedure for reconciling an attorney's ethical obligation not to pursue a frivolous appeal and a defendant's right to appellate counsel. Anders, 386 U.S. at 744. In the first sentence of its decision, the Anders court noted its focus on

28

the actions of appellate counsel. Id. at 739 ("We are here concerned with the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal"). The Court explained that "if counsel finds [the] case . . . wholly frivolous, after a conscientious examination of it, [the attorney] should so advise the court and request permission to withdraw." Id. at 744. Such a request must be "accompanied by a brief referring to anything in the record that might arguably support the appeal." Id. The court then must provide the defendant with the attorney's no-merit brief and time to respond to it. Id. The court then fully examines the proceedings and decides whether the case is "wholly frivolous." Id.

But the acceptable procedure the Court described in Anders is not the only possible procedure a state court might use, and is not mandatory. Smith v. Robbins, 528 U.S. 259, 265 (2000). "[T]he Constitution itself does not compel the Anders procedure." Id. at 273. "[T]he Anders procedure is not 'an independent constitutional command,' but rather is just 'a prophylactic framework' that [the United States Supreme Court] established to vindicate the constitutional right to appellate counsel announced in Douglas." Id. (quoting Pennsylvania v. Finley, 481 U.S. 551, 555 (1987)). "[The Court] did not say that [the] Anders procedure was the only prophylactic framework that could adequately vindicate this right; instead, by making clear that the Constitution itself does not compel the Anders procedure, [the Court] suggested otherwise."

Id. The court stated that Anders merely outlined "an *acceptable* procedure," and "the States are free to adopt different procedures so long as those procedures adequately safeguard a defendant's right to appellate counsel." Id. at 265 (emphasis added).

The court first notes that in its March 25, 2019 order, this court "agree[d] with Judge Duffin that the petitioner presented both a Fourteenth Amendment claim and a Sixth Amendment claim, that he had not exhausted the Sixth Amendment claim and that this resulted in a 'mixed' petition." Dkt. No. 22 at 6-7. The court "allow[ed] the petitioner to withdraw his unexhausted Sixth Amendment ineffective assistance of appellate counsel claim," and cautioned the petitioner to "confine his future arguments to the question of whether the state court denied him his Fourteenth Amendment right to a meaningful appeal by accepting and adopting the no-merit brief." Id. at 7.  The petitioner cannot now circumvent that order by raising ineffective assistance of counsel claims—that the trial court did not explore whether there was a breakdown of communication with his counsel, that the trial court erred in failing to allow him to substitute counsel, etc.—under the guise of claiming that the Wisconsin courts denied his right to a meaningful appeal under the Fourteenth Amendment when it adopted Attorney Schertz's no-merit reports. The court will not address those arguments because the petitioner did not exhaust his Sixth Amendment claim.

As for the petitioner's Fourteenth Amendment claim, Anders does not create a Fourteenth Amendment right for the state court to use a particular

process in reviewing a defendant's case to determine whether an appeal would be frivolous. It requires only that appellate counsel do more than simply advise the appeals court that the petitioner has no meritorious claims, by referencing anything in the record that could support an appeal. The petitioner has not argued that *Attorney Schertz* violated <u>Anders</u>, and there would be no support for such an argument in the record. Schertz referenced numerous issues that could conceivably have supported an appeal, and discussed some of those issues in more depth when asked by the court to do so. He did not simply report to the court that the petitioner had no meritorious issues and ask to withdraw.

As for the appellate court's obligation once it received the no-merit reports, the appellate court is required to determine whether an appeal would be frivolous. In a footnote of its decision adopting Attorney Schertz's no-merit reports and affirming the petitioner's convictions, the Wisconsin Court of Appeals stated:

> This court will not attempt to address every issue that arose in this case. The thirty-nine page no-merit report and the twelve-page supplemental report provide an exhaustive summary of the numerous motions and rulings that occurred before and during trial. As noted, we agree with counsel's analysis and conclusion that none of the issues identified presents an issue of arguable merit.

Dkt. No. 24-6 at 4. Based on this footnote, the petitioner concludes that the Wisconsin Court of Appeals failed to conduct "a full examination of all the proceedings, to decide whether the case is 'wholly frivolous'" as the United States Supreme Court used that phrase in <u>Anders</u>. Dkt. No. 29 at 9. This

31

argument assumes first that the acceptable procedure described in <u>Anders</u> is mandated by the Constitution; as the court has explained, it is not.

Even if it were, <u>Anders</u> does not hold that a "full examination of the proceedings" requires the appellate court to address every potential issue raised by appellate counsel, or that it conduct its own independent review of every possible appellate issue. The Wisconsin Court of Appeals did not, as the petitioner implies, simply rubber-stamp Attorney Schertz's conclusions. After reviewing the original no-merit report, it asked Attorney Schertz to more specifically address particular issues—despite the fact that the original report was extensive, detailed and *thirty-nine pages* in length. Schertz's supplemental report was another eleven pages. After reading both reports and explicitly stating that it had "independently reviewed the record"—arguably the "full examination of the proceedings" mentioned in <u>Anders</u>—the court concluded that there was no issue of arguable merit to pursue on appeal.

It is possible that the petitioner means to argue that the Court of Appeals did not follow Wisconsin's no-merit procedure; in opposing the no-merit brief, he referenced Wis. Stat. §809.32, which prescribes Wisconsin's no-merit procedure. If the Court of Appeals *did* violate Wis. Stat. §809.32,[6] that would not be a sufficient basis for this federal court to grant *habeas* relief. A federal

---

[6] Wis. Stat. §809.32(3) states, "In the event that the court of appeals determines that further appellate proceedings would be frivolous and without any arguable merit, the court of appeals shall affirm the judgment of conviction or final adjudication and the denial of any postconviction or postdisposition motion and relieve the attorney of further responsibility in the case." It does not require the appellate court to independently address every possible appellate issue or even to mention each issued raised in the no-merit brief.

court may grant *habeas* relief only when it finds that the state-court decision was contrary to, or involved an unreasonable application of, *federal* law as determined by the U.S. Supreme Court—not for violations of or unreasonable applications of state law. See, *e.g.*, Crawford v. Littlejohn, 963 F.3d 681, 683 (2020) ("errors of state law do not support collateral relief in federal court") (citing Estelle v. McGuire, 502 U.S. 62 (1991)).

The court will deny relief.

### III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petition does not warrant *habeas* relief under 28 U.S.C. §2254(d).

### IV.    Conclusion

The court **DISMISSES** the petition for writ of *habeas corpus*. Dkt. No. 1.

The court **ORDERS** the case is **DISMISSED**. The clerk will issue judgment accordingly.

The court **DECLINES** to issue a certificate of appealability.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Fed. R. Civ. P. 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Fed. R. Civ. P. 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 9th day of January, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

34